835 A.2d 301

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JEFFREY NEGRAN, DEFENDANT–RESPONDENT.

Argued October 21, 2003—Decided November 25, 2003.

*James L. McConnell,* Assistant Prosecutor, argued the cause for appellant (*Wayne J. Forrest,* Somerset County Prosecutor, attorney; *Robert C. Lang, Jr.,* Deputy First Assistant Prosecutor, of counsel and on the brief).

*James R. Wronko,* argued the cause for respondent (*Wronko & Loewen,* attorneys).

Justice LaVECCHIA delivered the opinion of the Court.

A Somerset County Grand Jury returned an indictment charging defendant Jeffery Negran with third-degree eluding. He applied for and was denied admission to pretrial intervention (PTI) by the Somerset County Prosecutor. The issue in this appeal is whether the prosecutor committed an abuse of discretion by basing his denial on defendant's past driving history. It is clear a past motor vehicle offense is not a criminal event for purposes of PTI evaluation. We recognize, however, that a driving history can have some limited relevance to a PTI application if there is a strong substantive and temporal relationship between the past motor vehicle offenses and the offense with which a PTI applicant has been charged. In such settings, a driving record could demonstrate that a defendant has engaged in a "pattern of anti-social behavior" as contemplated in *N.J.S.A.* 2C:43–12e(8). Because there is no close temporal connection between defendant's past motor vehicle offenses and his present eluding charge, we affirm the Appellate Division's determination that the prosecutor's denial here constituted a patent and gross abuse of discretion.

I.

The facts pertinent to defendant's appeal are not in dispute. Shortly after midnight on August 1, 2001, the Franklin Township Police Department received citizen information that a car had entered a parking lot, struck two parked cars, and then was driven back onto the streets of Franklin Township. Based on the description received, Sergeant Recine spotted the vehicle in the vicinity in which it was reported. Joined by another responding police cruiser, Sergeant Recine positioned his vehicle immediately behind defendant's automobile. Despite the fact that both marked vehicles had sirens and patrol lights activated, defendant ignored the officers' signals to pull over. Defendant proceeded down Franklin Boulevard through cross-streets, veering off the roadway and up onto the curb on three occasions. After proceeding a few

blocks further, defendant again veered into the curb and punctured his tire, causing his vehicle to come to a stop.

While placing defendant under arrest, the officers detected a strong odor of alcohol. Also, defendant's eyes were bloodshot and his speech was slurred. A Breathalyzer test was administered and twice it measured defendant's blood alcohol content at .19 percent.

Following his arrest, defendant voluntarily entered a program of alcohol dependency rehabilitation. He completed the twenty-three session Intensive Outpatient Program administered by Princeton House of North Brunswick. His involvement with the Alcoholics Anonymous portion of that program is ongoing.

As noted, a Somerset County Grand Jury issued an indictment charging defendant with third-degree eluding, in violation of *N.J.S.A.* 2C:29-2b. Application was made for admission into the Somerset County PTI program. The vicinage criminal division manager, who serves as its PTI Director, informed defendant that he was an appropriate candidate for the program. He had "no prior contact with the criminal justice system," was charged with a nonviolent crime of the third degree (one that was not an offense for which the guidelines express a presumption against admission), and he successfully had completed intensive outpatient rehabilitation and was continuing his participation in Alcoholics Anonymous. The Director conditioned his favorable recommendation on defendant's continuation in "aftercare as recommended by the Princeton House," submission to "drug and alcohol testing and treatment as recommended by the Somerset Probation Department," and participation and completion of fifty hours of community service.

Notwithstanding the Director's recommendation, the State refused consent to defendant's entry into PTI. In a January 10, 2002 letter, the Somerset County Prosecutor cited defendant's extensive driving record and a prior DWI conviction as the basis for the denial. In the letter, the Prosecutor states that

> [t]he defendant is 36 years of age. Although this is defendant's first arrest for a crime of an indictable nature, the State submits that he is an unacceptable

candidate for the Pretrial Intervention Program. Defendant's driving history, dating back to 1985, indicates that his driver's license has been suspended twice. He has been convicted of speeding six times between 1984 and 1992. In addition, the defendant was also convicted of driving the wrong way on a one-way street in 1985. More importantly, defendant has a prior conviction for driving while intoxicated in 1989.

According to the Prosecutor, defendant's entire driving history "demonstrates a flagrant disobedience for the laws of the State of New Jersey and a complete disregard for the safety of others." The Prosecutor states that "[i]t does not appear likely that the defendant's crime is related to a situation that would be conducive to change," and, further characterizes defendant's crime as "part of a continuing pattern of anti-social behavior." He concludes that defendant's crime was "of such a nature that the value of supervisory treatment [was] clearly outweighed by the public need for prosecution."

Defendant's motion to appeal pursuant to *Rule* 3:28(h) was granted. The motion court found a patent and gross abuse of discretion because the State's rejection was based on inappropriate factors. The court observed that although an applicant's past criminal convictions may be considered when determining whether a defendant would be a successful PTI candidate, the guidelines governing PTI admission contain no authorization for the use of past motor vehicle offenses as a basis for denial. Acknowledging the undesirable nature of defendant's driving history, the court nonetheless concluded that that was an insufficient reason for denying admission into PTI. Defendant's driving infractions spanned a period of seventeen years, and ten years had elapsed since defendant's last motor vehicle offense. The prior DWI had occurred more than thirteen years before. Those considerations, coupled with 1) defendant's voluntary participation in recent intensive and ongoing alcohol dependency rehabilitation, 2) the fact that defendant had never been convicted of an indictable offense or any disorderly persons offense, and 3) that defendant's present charge was third, not second, degree eluding and, therefore, did not involve endangering anyone else, led the court to conclude that the State committed a patent and gross abuse of discretion by denying

PTI admission to defendant. The court stayed its decision to allow the State time to appeal.

The Appellate Division affirmed in an unpublished opinion, also finding that the State's rejection "represented a clear error in judgment and a patent and gross abuse of discretion." The court concluded that prior motor vehicle convictions did not comport with the prior "criminal offense" criterion in the statute and guidelines governing admission to PTI. If analyzed as part of an alleged "pattern of anti-social behavior" that may be considered pursuant to *N.J.S.A.* 2C:43–12e(8), the long passage of time since defendant's last offense rendered his "driving history" incapable of establishing "a continuing pattern." Hence, the court believed reliance on that history to be misplaced. We granted the State's petition for certification, *State v. Negran,* 176 *N.J.* 73, 819 *A.*2d 1189 (2003), and now affirm.

## II.

*N.J.S.A.* 2C:43–12 and *Rule* 3:28 with its accompanying guidelines (*Guidelines*) elucidate the "purposes, goals, and considerations relevant to PTI." *State v. Brooks,* 175 *N.J.* 215, 223, 814 *A.*2d 1051, 1056 (2002). As a diversionary program, PTI serves both prosecutors and applicants in that it "augment[s] the options of prosecutors in disposing of criminal matters . . . [and it] provide[s] applicants 'with opportunities to avoid ordinary prosecution by receiving early rehabilitative services or supervision, when such services or supervision can reasonably be expected to deter future criminal behavior by an applicant.' " *Ibid.* (citations omitted). Admission requires a positive recommendation from the PTI director and the consent of the prosecutor. *State v. Nwobu,* 139 *N.J.* 236, 246, 652 *A.*2d 1209, 1213–14 (1995). Admission determinations "are 'primarily individualistic in nature' and a[n administrator and] prosecutor must consider an individual defendant's features that bear on his or her amenability to rehabilitation." *Id.* at 255, 652 *A.*2d at 1218 (quoting *State v. Sutton,* 80 *N.J.* 110, 119, 402 *A.*2d 230, 235 (1979)). The evaluation must be conducted in

compliance with the criteria set forth in *N.J.S.A.* 2C:43–12e, and reinforced in *Guideline* 3.

*N.J.S.A.* 2C:43–12e states, in relevant part:

Prosecutors and program directors shall consider in formulating their recommendation of an applicant's participation in a supervisory treatment program, among others, the following criteria:

(1) The nature of the offense;

(2) The facts of the case;

(3) The motivation and age of the defendant;

(4) The desire of the complainant or victim to forego prosecution;

(5) The existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment;

(6) The likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through his participation in supervisory treatment;

(7) The needs and interests of the victim and society;

(8) The extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior;

(9) The applicant's record of criminal and penal violations and the extent to which he may present a substantial danger to others;

(10) Whether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior;

(11) Consideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal act;

(12) The history of the use of physical violence towards others;

(13) Any involvement of the applicant with organized crime;

(14) Whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution;

(15) Whether or not the applicant's involvement with other people in the crime charged or in other crime is such that the interest of the State would be best served by processing his case through traditional criminal justice system procedures;

(16) Whether or not the applicant's participation in pretrial intervention will adversely affect the prosecution of codefendants; and

(17) Whether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program.

 In respect of the close relationship of the PTI program to the prosecutor's charging authority, courts allow prosecutors wide latitude in deciding whom to divert into the PTI program and whom to prosecute through a traditional trial. *Nwobu, supra,* 139 *N.J.* at 246, 652 *A.*2d at 1214. The deference has been categorized as "enhanced" or "extra" in nature. *State v. Baynes,* 148 *N.J.* 434, 443–44, 690 *A.*2d 594, 598 (1997) (citations omitted). Thus, the scope of review is severely limited. *Nwobu, supra,* 139 *N.J.* at 246, 652 *A.*2d at 1213–14; *State v. Hermann,* 80 *N.J.* 122, 128, 402 *A.*2d 236, 239 (1979); *State v. Kraft,* 265 *N.J.Super.* 106, 111, 625 *A.*2d 579, 581 (App.Div.1993). Judicial review serves to check only the "most egregious examples of injustice and unfairness." *State v. Leonardis,* 73 *N.J.* 360, 384, 375 *A.*2d 607, 619 (1977); *accord Nwobu, supra,* 139 *N.J.* at 246, 652 *A.*2d at 1213–14; *State v. DeMarco,* 107 *N.J.* 562, 566, 527 *A.*2d 417, 419–20 (1987).

 A prosecutor's discretion in respect of a PTI application is not without its limits, however. *Brooks, supra,* 175 *N.J.* at 225, 814 *A.*2d at 1057–58. A rejected applicant must be provided with a clear statement of reasons for the denial. *N.J.S.A.* 2C:43–12f; *Guideline 8.* That writing requirement is intended to facilitate judicial review, assist in evaluating the success of the PTI program, afford to defendants an opportunity to respond, and dispel suspicions of arbitrariness. *State v. Wallace,* 146 *N.J.* 576, 584, 684 *A.*2d 1355, 1359 (1996); *Nwobu, supra,* 139 *N.J.* at 249, 652 *A.*2d at 1215. The requirement also enables a defendant to challenge erroneous or unfounded justifications for denial of admission. *Nwobu, supra,* 139 *N.J.* at 249, 652 *A.*2d at 1215. A defendant attempting to overcome a prosecutorial veto must " 'clearly and convincingly establish that the prosecutor's refusal to sanction admission into a PTI program was based on a patent and gross abuse of his discretion' before a court can suspend criminal proceedings under *Rule* 3:28 without prosecutorial consent." *Nwobu, supra,* 139 *N.J.* at 246, 652 *A.*2d at 1214 (quoting *Kraft, supra,* 265 *N.J.Super.* at 112, 625 *A.*2d at 582) (emphasis

deleted). That standard, which governs our review here, requires the following showing:

> Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.
>
> [*State v. Bender*, 80 *N.J.* 84, 93, 402 *A.*2d 217, 222 (1979) (citation omitted).]

## III.

■ It is patently clear under the statute that a prosecutor may consider "[t]he applicant's record of criminal and penal violations and the extent to which he may present a substantial danger to others." *N.J.S.A.* 2C:43–12e(9). Thus, because motor vehicle violations are not "crimes," but rather only petty offenses, the courts below were correct in concluding that defendant's past driving infractions do not support his disqualification from PTI admission pursuant to *N.J.S.A.* 2C:43–12e(9). *See generally State v. Hammond*, 118 *N.J.* 306, 311–12, 571 *A.*2d 942, 944–45 (1990) (reasoning that motor vehicle violations, including DWI violations, constitute only "petty offenses" and thus are distinct from violations intended to constitute "offenses" under the New Jersey Code of Criminal Justice); *see also, State v. Schreiber*, 122 *N.J.* 579, 584–85, 585 *A.*2d 945, 947–48 (1991) (noting that disorderly person offenses and motor vehicle violations, "though both petty offenses and not crimes, are distinct" and have been since 1921); *State v. Macuk*, 57 *N.J.* 1, 9–10, 268 *A.*2d 1, 5–6 (1970) (observing that "motor vehicle violations are not 'crimes' in this state, but only petty offenses" (citation omitted)).[1] The fact motor vehicle violations are not past "crimes" and, therefore, do not militate *per se* against defendant's admission into PTI as the State would sug-

---

[1] The portion of our holding in *Macuk* that addressed the applicability of *Miranda* warnings to motor vehicle violations, of course, was overruled by *Berkemer v. McCarty*, 468 *U.S.* 420, 104 *S.Ct.* 3138, 82 *L.Ed.*2d 317 (1984).

gest, does not mean that our inquiry is at an end. We turn next to the second argument proffered to support the State's rejection: that the abysmal nature of defendant's earlier driving record supports the determination that defendant persists in a pattern of anti-social behavior.

Recently we held in *Brooks, supra,* that a prosecutor could consider a PTI applicant's juvenile and adult arrest records in evaluating his suitability for PTI admission. 175 *N.J.* at 219, 814 *A.*2d at 1053. The factors listed in *N.J.S.A.* 2C:43–12e were not viewed as exhaustive, and we noted that the statute "does not evince the Legislature's intent to limit a prosecutor's discretion to the enumerated factors alone." 175 *N.J.* at 226–27, 814 *A.*2d at 1058. We concluded that the language in the statute that permits a prosecutor to consider "the applicant's record of criminal and penal violations and the extent to which he may present a substantial danger to others," to be "broad enough on its face to include a defendant's juvenile record." *Id.* at 227, 814 *A.*2d at 1059. We then addressed the scope of anti-social behavior that may be considered pursuant to *N.J.S.A.* 2C:43–12e(8). 175 *N.J.* at 227, 814 *A.*2d at 1059. In that respect, we concluded that a prosecutor "may consider not only serious criminal acts, but less serious conduct, including disorderly person offenses, offenses found under the juvenile code, and acts that technically do not rise to the level of adult criminal conduct." *Ibid.* Hence, the consideration of a "pattern of anti-social behavior" permits consideration of a wider category of conduct than just criminal or penal acts, such as those just described. *Ibid.*

Our reasoning in *Brooks* supports our conclusion that an applicant's past driving record might be relevant in considering the alleged "pattern of anti-social behavior" cited by the State for denying admission to PTI. *See also State v. Caliguiri,* 305 *N.J.Super.* 9, 701 *A.*2d 920 (App.Div.1997), *aff'd after remand* 158 *N.J.* 28, 726 *A.*2d 912 (1999) (holding in consolidated appeals that prosecutor's policy of categorically denying PTI to applicants based on type of offense committed, including alcohol-related

automobile offenses, constituted patent and gross abuse of discretion). That said, we conditioned our holding in *Brooks* by referencing the need for prosecutors to act reasonably when citing to anti-social behaviors such as prior juvenile arrests as a reason for denying PTI admission. We observed that "some juvenile infractions may be so minor or distant in time that they provide no reasonable basis to support a prosecutor's rejection of PTI in a given case." 175 *N.J.* at 219, 814 *A.*2d at 1054.

Here, the Prosecutor seeks to rely on defendant's DWI violation, which occurred twelve years prior to the underlying offense, and defendant's last motor vehicle violation of any sort (speeding), which occurred almost ten years before the current offense. Those offenses are too temporally distant to reasonably support the State's assertion of a *pattern* of anti-social behavior such that PTI should be denied. Although the State correctly points out that the present criminal episode involved use of alcohol while driving, as did the DWI that occurred thirteen years ago, that substantive connection between the crimes does not overcome the unreasonableness of the State's use of such stale prior infractions to support an allegation of a pattern of behavior.

Moreover, although a prosecutor is required to place special emphasis on the statutory criteria, he or she is encouraged to consider other relevant factors about an applicant in making the individualized assessment contemplated under the program. Such other relevant factors would include the applicant's efforts to seek help for a disorder and the applicant's progress in such program or therapy. Those considerations bear directly on the applicant's suitability to respond to short-term rehabilitation while subject to PTI supervision. Here, the Prosecutor's denial disregarded such considerations and improperly relied on defendant's driving record from ten years past and more. In these circumstances we agree with the judgment of the courts below that that State committed a patent and gross abuse of discretion in denying PTI admission.

## IV.

The judgment of the Appellate Division is affirmed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

*For affirming and remanding*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN, and WALLACE—7.

*Opposed*—None.