913 A.2d 151 (2007)
389 N.J. Super. 401
STATE of New Jersey, Plaintiff-Appellant,
v.
David LIVIAZ, Defendant-Respondent.
State of New Jersey, Plaintiff-Appellant,
v.
Dennis J. Claros-Benitez, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted December 12, 2006.
Decided January 10, 2007.
Robert D. Bernardi, Burlington County Prosecutor, attorney for appellant in both appeals (Deborah A. Siegrist, Assistant Prosecutor, of counsel and on the brief).
Yvonne Smith Segars, Public Defender, attorney for respondents in both appeals (Marcia Blum, Assistant Deputy Public Defender, of counsel and on the brief).
Before Judges COBURN, AXELRAD and GILROY.
The opinion of the court was delivered by
COBURN, P.J.A.D.
In these appeals, consolidated for purposes of this opinion, we review two Law Division orders admitting defendants to the Pretrial Intervention Program ("PTI") over the objection of the Burlington *153 County Prosecutor. The judge found that in both cases the prosecutor's action was a patent and gross abuse of his discretion because, without giving sufficient weight to other relevant factors, he rejected the applications on the sole ground that the defendants were illegal aliens. Although we agree that PTI may not be denied solely because a defendant is an illegal alien, we reverse both orders because we are satisfied that it can be a relevant factor and that in each case the prosecutor reasonably took it into account in addition to other relevant factors, reaching conclusions that were well within his discretion.
Before addressing each defendant's particular circumstances, we take note of the general legal principles governing PTI. In deciding PTI applications, prosecutors must consider "an individual defendant's features that bear on his or her amenability to rehabilitation." State v. Nwobu, 139 N.J. 236, 255, 652 A.2d 1209 (1995). And that evaluation "must be conducted in compliance with the criteria set forth in N.J.S.A. 2C:43-12e, and reinforced in Guideline 3 [of Rule 3:28]." State v. Negran, 178 N.J. 73, 80-81, 835 A.2d 301 (2003). But prosecutors have "wide latitude" in their PTI decisions and our scope of review is "severely limited." Id. at 82, 835 A.2d 301. The judiciary's role is limited to checking "only the `most egregious examples of injustice and unfairness.'" Ibid. (citing, among other cases, State v. Leonardis, 73 N.J. 360, 384, 375 A.2d 607 (1977)). And a "defendant attempting to overcome a prosecutorial veto must clearly and convincingly establish that the prosecutor's refusal to sanction admission into a PTI program was based on a patent and gross abuse of his discretion. . . ." Ibid. (internal quotations omitted).
Defendant David Liviaz was indicted for a third degree crime and a fourth degree crime involving false documents, N.J.S.A. 2C:21-1(a)(3)(count one), and N.J.S.A. 2C:21-2.1(c) (count two); fourth degree false swearing, N.J.S.A. 2C:28-2(a) (count three); and fourth degree hindering apprehension, N.J.S.A. 2C:29-3(b)(4)(count four). His application for PTI was denied by the program director and by the prosecutor.
The prosecutor's rejection letter of March 15, 2005, was prepared by Assistant Prosecutor Deborah A. Siegrist, who described the events leading up to defendant's arrest as follows:
I first considered the nature and facts of the offense. Police responded to a report of two suspicious persons at the Medford branch of the Division of Motor Vehicles (now MVC). The DMV employee pointed out defendant to the officer and told the officer that defendant's companion, no longer present, had presented an application for a driver's license along with a birth certificate that appeared to be fraudulent. The birth certificate presented was in the name of Erwin William Alvarado. The driver's license application was in the name of Erwin William Alvarado. When the responding police officer asked defendant for identification, defendant supplied a driver's license in the name of Emilio Purchury with a Newark address. He told the officer that he had merely come to the DMV to fill out a change-of-address form. He did not know the address to which he was changing. He said he had come down from Newark with someone named Juan Carlos.
Police took defendant to the station for questioning. He signed a Miranda card with the name Emilio Purchury. For the arrest report, he gave his name as Emilio Purchury, with a Newark address and a date of birth of 1/28/73. He signed his fingerprint card as Emilio Purchury. Police immediately sent in *154 his fingerprints, and they came back as belonging to David Liviaz of Belleville, NJ, date of birth 9/28/72. When confronted with that information, defendant admitted that he had lied and that he had obtained all of the information from his friend Emilio Purchury, who was leaving the country and no longer needed it.
Meanwhile, police had located the second "suspicious person" at a Burger King near the DMV and brought him to the DMV. Defendant claimed not to know the person. The person, who identified himself as Alfonso Quintana, told police that he had in fact come with defendant to the DMV. "Quintana" said that he lived in Paterson and defendant lives in Newark and drives into Paterson and gets guys to take driver's license tests for him. On that date, he was approached by defendant and asked to go for a ride and get a driver's license. He said that defendant, known to him only as "Chato," drove him down to the Medford DMV. Defendant provided him with a birth certificate and instructed him to enter the DMV and apply for a driver's license in that name, take the driver's permit examination and provide the permit to defendant. Defendant would then pay him $300. Through fingerprints, police determined that this second man was actually Victor Sanchez, now a co-defendant in this case.
The police contacted Middle Township, New Jersey, from where the birth certificate submitted by Sanchez purported to be. They confirmed that the birth certificate was a forgery; there was no Erwin William Alvarado born in their jurisdiction. Furthermore, over the previous nine months, there had been approximately ten other instances of people trying to pass forged Middle Township birth certificates throughout the state.
In defendant's vehicle, police found a driver's license application in the name of Apolonio Aguilar-Flores, an examination permit in the name of Miriam C. Reina-Jimenez and an examination permit in the name of Jennifer Torres. Police contacted the INS, who advised that David Liviaz was not registered with them and that they would be putting a detainer on him.
After noting that the nature of defendant's offenses "would not necessarily indicate rejection of defendant's application for PTI," the assistant prosecutor then provided this thorough and carefully considered explanation for the rejection:
I reject primarily on the basis that I do not believe defendant is amenable to rehabilitation through PTI. He has engaged in a lengthy pattern of anti-social behavior. He is a citizen of Peru, who is in this country illegally. He has been in this country illegally for 13 years. He has chosen to commit a criminal act every day that he remains in this country illegally. I understand that at some point after his arrest defendant petitioned for legal status and that matter is pending. However, he has not been in such an open and above-board stance throughout his illegal stay. Rather than attempting to gain some legal status, he has actively engaged in fraud and subterfuge to remain here. He went to the trouble of obtaining fraudulent identification. He further perpetuated this by providing a false identity to the police when stopped and refusing to provide his true identity until it was conclusively established by his fingerprints. This behavior is not indicative of an honest person who has engaged in an aberrant single episode of criminal activity. Rather, it is indicative of a person who does not feel bound by the law when it is not consonant with his own desires. *155 Furthermore, there are indications from the statement of Sanchez and from the materials found in defendant's vehicle that he is involved in other continuing illegal activity with regard to procuring fraudulent drivers' permits and/or licenses. I do not believe that PTI is sufficient sanction to deter him from further criminal activity.
Further indication of the unlikelihood of defendant's amenability to rehabilitation through PTI is the fact that he has been a fugitive for a number of years. A warrant was issued for his arrest on May 22, 2002, when he failed to appear for a pre-arraignment conference. He was a fugitive until June 17, 2005. He then failed to appear for his arraignment on July 5, 2005, and was a fugitive until August 2, 2005. I understand that you have advised me that he was not a "fugitive" in the sense of the word that he was hiding or fleeing. Nonetheless, he did fail to honor his court commitments, whether knowingly or because he did not keep the courts advised of his whereabouts for purposes of receiving notice. This does not bode well for his compliance with PTI reporting requirements.
I have considered all of the pertinent information provided by defendant. He is 33 years old. He has no prior criminal convictions in this country. I do not know what kind of background he has in Peru. He is unemployed. He lives with his paramour, with whom he has two children. He has also fathered one child each with two other women. One of them has a child-support case pending against him. He completed high school in Peru. None of this persuades me that defendant is amenable to rehabilitation through PTI.
I further conclude that any potential benefits to defendant or society by virtue of his diversion are outweighed by the needs and interests of society in prosecuting and deterring this conduct. It is clearly a priority for our national security to know the identities of those inhabiting our country.
I have considered that among the goals underlying PTI is providing alternatives to prosecution when early rehabilitative services can be provided and/or when PTI can be expected to serve as sufficient sanction to deter future criminal conduct. I do not believe that is the case here. I also have considered that a criminal conviction might have a harmful impact upon defendant's future; it may contribute to his deportation. I have considered that defendant's conduct is worthy of the expenditure of criminal justice resources.
Although the judge found that the assistant prosecutor's letter "clearly recited all of the relevant factors for an individual review" of defendant's PTI application, she concluded that in reality it applied, sub silentio, a per se rule disallowing PTI for any illegal alien.
Guideline 2, Rule 3:28, clearly states that "[a]ny defendant accused of crime shall be eligible for admission into a PTI program." Thus, apart from some limited exceptions not implicated in this case, see Pressler, Current N.J. Court Rules, comment 2 on R. 3:28 (2007), use of a per se rule is prohibited.
Our difficulty with the trial judge's opinion is its failure to demonstrate that a per se rule was in fact applied. Quite to the contrary, the assistant prosecutor emphasized these points: defendant was not merely an alien, but had remained so for thirteen years; the length of his illegal presence and the particular crimes charged, as well as the additional crimes suggested by the contents of his car, indicated a lack of honesty and persistence in *156 violating the law; his disregard of court orders, as reflected by the issuance of two bench warrants for failure to appear in these proceedings, shows a disdain for the law, in particular because he was a fugitive on the first warrant for over three years; and that disdain further suggests that he is unlikely to comply with PTI reporting requirements. Those are all substantial reasons for denial of PTI. Consequently, we are satisfied that defendant failed to prove that the prosecutor's denial of PTI was a patent and gross abuse of his discretion.
Defendant Claros-Benitez was indicted on one count of third degree forging, changing, or counterfeiting motor vehicle title papers, N.J.S.A. 2C:21-4.8(b)(3), and three counts of fourth degree possession of a false driver's license and government-issued identification documents, N.J.S.A. 2C:21-2.1(d). His application for PTI was also denied by the program director and by the prosecutor.
The prosecutor's rejection letter of March 16, 2006, was also prepared by Assistant Prosecutor Siegrist, and reads in pertinent part as follows:
I reject primarily on the basis that I do not believe defendant is amenable to rehabilitation through PTI. He has engaged in a lengthy pattern of anti-social behavior. He is a citizen of Honduras, who is in this country illegally. He has been in this country illegally for five years. He has chosen to commit a criminal act every day that he remains in this country illegally. Rather than attempting to gain some legal status, he has actively engaged in fraud and subterfuge to remain here. He went to the trouble of obtaining fraudulent identification. This behavior is not indicative of an honest person who has engaged in an aberrant single episode of criminal activity. Rather, it is indicative of a person who does not feel bound by the law when it is not consonant with his own desires. I do not believe that PTI is sufficient sanction to deter him from further criminal activity.
I have considered all of the pertinent information provided by defendant. He is 26 years old. He has no prior criminal convictions in this country. I do not know what kind of background he has in Honduras. He reports being employed as a carpenter for four years. Presumably this is "under the table," as he has no social security number. He lives with his paramour and their child. He completed high school in Honduras. None of this persuades me that defendant is amenable to rehabilitation through PTI.
I further conclude that any potential benefits to defendant or society by virtue of his diversion are outweighed by the needs and interests of society in prosecuting and deterring this conduct. It is clearly a priority for our national security to know the identities of those inhabiting our country.
I have considered that among the goals underlying PTI is providing alternatives to prosecution when early rehabilitative services can be provided and/or when PTI can be expected to serve as sufficient sanction to deter future criminal conduct. I do not believe that is the case here. I also have considered that a criminal conviction might have a harmful impact upon defendant's future; it may contribute to his deportation. I have considered that defendant's conduct is worthy of the expenditure of criminal justice resources.
Again the trial judge found that the prosecutor's decision was a gross and patent abuse of discretion because it applied a per se rule to deny defendant PTI. We disagree with that characterization of the *157 assistant prosecutor's rejection letter. Although defendant's illegal status was an important factor, it was far from the only factor on which the assistant prosecutor relied. Rather, she emphasized the length of defendant's illegal stay in this country, his complete failure to attempt to gain legal status, his working "under-the-table," and his involvement in fraud and subterfuge to remain here.
Given the reasons set forth in the assistant prosecutor's rejection letter, we cannot agree with the trial judge's conclusion that a per se rule was applied.
Reversed and remanded for further proceedings not inconsistent with this opinion.