**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5302-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

G.M.,

    Defendant-Appellant.

_____

Submitted October 10, 2017 — Decided October 18, 2017

Before Judges Sabatino and Whipple.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 15-10-1391.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele E. Friedman, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Kerry J. Salkin, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant G.M.[1] appeals the trial court's February 29, 2016 order upholding the prosecutor's rejection of her application for admission to the pretrial intervention ("PTI") program, and her ensuing conviction of fourth-degree child abuse or neglect, N.J.S.A. 9:6-1 and N.J.S.A. 9:6-3. Applying the strong judicial deference required in reviewing such prosecutorial denials, we affirm.

Defendant is the mother of a young son, I.L. The child's father is H.L., who was a co-defendant with G.M. in this prosecution.

The charges against I.L.'s parents arose out of a situation of child endangerment that occurred on March 13 and 14, 2015, when their infant was then nine months old. According to the State's investigation, H.L. was at the parties' residence playing with the child on the bed at around 4:30 p.m. when he received a Netflix notification on his cell phone. When H.L. reached for the phone, the infant fell off the bed. G.M., who was in another room, heard a bang and H.L. called out to her that the infant had fallen.

According to the parents, they did not immediately notice any bump on the child's head. The parents then went out together as H.L. performed his job delivering pizzas, bringing the infant

_____

[1] We use initials to protect the privacy and identity of G.M.'s minor child.

along with them. H.L. admitted that he smoked marijuana during one of his delivery stops that evening.

Around 10:30 p.m., the parents noticed that the infant was exhibiting a bump on his head. The parents at that point decided to take the child to Jersey City Medical Center. G.M. allowed H.L. to drive with the infant in the car, even though the State contends she had seen him smoking marijuana.

As reflected on the hospital's surveillance video, the parents did not arrive at the Jersey City Medical Center until almost midnight, more than an hour after they noticed the infant's swollen head. According to the parents, they left the Jersey City Medical Center because they felt the infant was not being seen there in a timely manner. They then drove to Hoboken Hospital. Along the way, the couple stopped so that H.L. could sell his marijuana to a friend. They did so because H.L. realized that they would be reported to the Division of Child Protection and Permanency ("the Division") if they were found in possession of marijuana at the hospital.

When the infant ultimately arrived at Hoboken Hospital, he was diagnosed with a skull fracture, internal bleeding, and an epidural hematoma. The child had emergency surgery. Meanwhile, the Division was notified. During ensuing interviews, both parents

admitted that they had smoked marijuana, although G.M. only admitted having done so on the day before the infant's fall.

The State charged both parents as co-defendants with various offenses in a single indictment. G.M. was charged with two counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (counts six and ten), and two counts of fourth-degree child abuse or neglect, N.J.S.A. 9:6-1 and 9:6-3 (counts seven and eleven).

G.M., who has no prior criminal record, applied for admission to PTI. Although the court's assistant division manager recommended G.M.'s admission to the program, the prosecutor rejected her application. In a two-page rejection letter, which he later amplified in his brief to the trial court, the prosecutor stressed several points. Among other things, the prosecutor noted the serious nature of the infant's skull fracture; G.M.'s acquiescence in allowing H.L. to drive the infant around, despite her awareness that he had been smoking marijuana and was under the influence; the couple's delay in bringing the child to the hospital, including the stop to make a drug transaction; and the fact that co-defendant H.L.'s case was still open when G.M. applied for PTI.

G.M. filed a motion with the trial court seeking to set aside the prosecutor's rejection of her PTI application. After

considering the parties' written submissions and oral argument, the trial judge denied the motion. The judge frankly acknowledged that although he might personally have approved PTI for G.M., he was not persuaded on the record presented that the State's denial amounted to a "patent [and gross] abuse" of the prosecutor's discretion. See State v. K.S., 220 N.J. 190, 199-200 (2015) (reaffirming the scope of review applicable to prosecutor denials of PTI).

Following the trial court's ruling, G.M. negotiated a guilty plea to the fourth-degree charge of child abuse or neglect set forth in count eleven of the indictment. The other charges were dismissed. She was sentenced to a period of two years of probation, consistent with the terms of the plea agreement. The plea agreement preserved G.M.'s right to reapply for PTI and, by inference, the present appeal of the court's PTI ruling.

On appeal, G.M. makes the following singular argument in her brief:

> POINT I
>
> THE PROSECUTOR'S REJECTION OF [G.M.'S] APPLICATION TO BE ADMITTED INTO PTI CONSTITUTED A PATENT AND GROSS ABUSE OF DISCRETION.

Like the trial judge, we must be mindful that the Judiciary's authority to second-guess prosecutorial decisions on PTI admission

is extremely narrow. Given "the close relationship of the PTI program to the prosecutor's charging authority, courts allow prosecutors wide latitude in deciding whom to divert into the PTI program and whom to prosecute through a traditional trial." State v. Negran, 178 N.J. 73, 82 (2003) (citing State v. Nwobu, 139 N.J. 236, 246 (1995)). This deference to the prosecutor has been described as "'enhanced' or 'extra'" in nature. Ibid. (citing State v. Baynes, 148 N.J. 434, 443-44 (1997)).

It is well settled that the scope of judicial review of a prosecutor's objection to a defendant's admission into PTI is severely limited. Ibid.; see also Nwobu, supra, 139 N.J. at 246; State v. Hermann, 80 N.J. 122, 128 (1979). As the Court observed in Negran, judicial review of PTI denials "serves to check only the 'most egregious examples of injustice and unfairness.'" Negran, supra, 178 N.J. at 82 (quoting State v. Leonardis, 73 N.J. 360, 384 (1977)); State v. DeMarco, 107 N.J. 562, 566 (1987).

In accordance with these principles, a defendant seeking to overcome a prosecutorial veto of PTI admission must "'clearly and convincingly establish that the prosecutor's refusal to sanction admission into a PTI program was based on a patent and gross abuse of his discretion' before a court can suspend criminal proceedings under Rule 3:28 without prosecutorial consent." Negran, supra, 178 N.J. at 82 (quoting Nwobu, supra, 139 N.J. at 246). See also

6

K.S., supra, 220 N.J. at 199-200 (reaffirming a defendant's "clear and convincing" burden to show a "patent and gross abuse" of a prosecutor's discretion in denying PTI).

We agree with the trial court's assessment that G.M. has failed to surmount this "clear and convincing" burden here. Although the fact pattern suggests that the father, H.L., was more culpable then G.M. in placing the infant at risk, the overall sequence of events is one in which the prosecutor had ample justification to decline G.M.'s PTI application, despite her lack of a prior criminal record. We further note that counts six and ten of the indictment charged G.M. with the second-degree offense of child endangerment, a level of offense severity which triggers a presumption against admission into PTI. See Pressler & Verniero, Current N.J. Court Rules, Guideline 3(i) to R. 3:28 at 1291 (2018); see also State v. Waters, 439 N.J. Super. 215, 226 (App. Div. 2015). That presumption was not clearly overcome here.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION