NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2598-19

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

KEPHINE OGUTA,

      Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

June 17, 2021

APPELLATE DIVISION

Submitted May 4, 2021 – Decided June 17, 2021

Before Judges Fisher, Gilson, and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 19-03-0292.

Joseph E. Krakora, Public Defender, attorney for appellant (John Douard, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Ednin D. Martinez, Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

GILSON, J.A.D.

This appeal presents the relatively rare set of facts requiring a self-defense

jury instruction when a defendant is charged with unlawful possession of a

weapon in violation of N.J.S.A. 2C:39-5(d). A jury convicted defendant Kephine Oguta of fourth-degree unlawful possession of a weapon, which was a knife, but acquitted him of more serious charges of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d). Defendant was sentenced to one year of probation.

He appeals, arguing that he should have been admitted to the pretrial intervention program (PTI), the jury instruction on the fourth-degree charge was improper because it did not include his request for a self-defense instruction, and his sentence was excessive. We reverse his conviction because the jury could have found self-defense was a justification for defendant's possession of a knife, which he testified he possessed for use at work and only took out spontaneously in self-defense. We find no merit in defendant's argument about his rejection from PTI. Given our reversal of his conviction, defendant's argument about his sentence is moot.

I.

Certain facts are not in dispute. On the evening of November 13, 2013, defendant got into a physical fight with two of his neighbors: N.M. (Moore) and

A-2598-19

G.M. (Mitchell).[1]  During that fight, defendant stabbed Mitchell with a knife and Mitchell was seriously injured.

Defendant was charged with aggravated assault, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon.  He applied for PTI, but the prosecutor objected.  Thereafter, defendant moved to compel his admission into PTI.  Following a hearing, the trial court denied that application in an order entered on July 11, 2019.

A jury trial was conducted in October 2019.  At trial, the jury heard two different versions of the fight.

Moore and his friend Mitchell testified that between 9:00 p.m. and midnight on November 13, 2013, they were drinking beer on Mitchell's front porch.  During that time, Moore received several calls from defendant.  Moore knew defendant because defendant was a neighbor and defendant's former girlfriend was then Moore's girlfriend.

According to Moore, defendant was angry and wanted to see him.  A short time later, defendant drove up, parked in front of Mitchell's house, and angrily

---

[1]  We use initials and fictitious names for the alleged victim and witness to protect their privacy interests.

A-2598-19

shouted for Moore to come down. When Moore refused, defendant walked onto the porch and asked Moore and Mitchell what kind of fight they wanted to have.

Moore told defendant that they should talk the next day, after defendant calmed down. Mitchell told defendant to get off his porch but, according to Mitchell, defendant came up, got in his face, and swung at him. Mitchell avoided the punch and punched defendant in the face. Moore then grabbed defendant to prevent him from falling over the porch's railing.

Defendant thereafter returned to his car, sat inside, but did not leave. At Moore's suggestion, Mitchell called out and apologized to defendant.

Moore and Mitchell then decided to go buy more beer and Moore started walking to his apartment to get money. As Moore was walking, he turned and saw defendant run up to Mitchell, strike him, and saw Mitchell fall to the ground. Moore then saw that defendant was holding a knife. Defendant chased Moore, but Moore grabbed a pipe, and defendant ran back to his car and drove away.

The police were called, and Mitchell was taken to the hospital where he underwent emergency surgery. Moore and Mitchell initially would not tell the police who stabbed Mitchell. Approximately two and a half weeks after the incident, however, Mitchell went to the police and identified defendant as his assailant.

A-2598-19

The second version of events was presented by defendant. Defendant testified that he lived next door to Moore, and that his former girlfriend and mother of two of his children was living with Moore. During the afternoon of November 13, 2013, the girlfriend called defendant to tell him that Moore had thrown her out of his house, and she had nowhere to stay. The girlfriend arranged to stay with her aunt in Jersey City and defendant drove her to the aunt's house.

After dropping the girlfriend off, defendant called Moore several times to discuss the girlfriend's situation. Moore told defendant that he was at Mitchell's house and defendant drove over to speak with Moore. When defendant arrived, Moore refused to come down to meet him, so defendant walked up to the porch.

According to defendant, Mitchell started punching him in the face and Moore held him from behind. To get away, defendant pulled out a pocketknife that he was carrying for work, opened it, and swung the knife to defend himself. Mitchell was stabbed in the stomach and defendant left the scene.

After the evidence was submitted, defendant requested that the jury be instructed on self-defense in connection with all three charges. The State opposed giving the instruction on the unlawful possession of a weapon charge. The trial court instructed the jury on self-defense in connection with the

A-2598-19

aggravated assault and possession of a weapon for an unlawful purpose charges. The court refused, however, to give the self-defense charge in connection with the unlawful possession of a weapon count.

Instead, the court gave the model jury charge concerning unlawful possession of a weapon without reference to self-defense. As part of that instruction the court told the jury:

> You may consider factors such as the surrounding circumstances, size, shape, condition of the object, the nature of its concealment, the time, place, and actions of the defendant when it was found in his possession to determine whether or not the object was manifestly appropriate for its lawful use.

As already noted, the jury acquitted defendant of second-degree aggravated assault and third-degree possession of a weapon for an unlawful purpose but found him guilty of unlawful possession of a weapon. Defendant now appeals.

## II.

On appeal, defendant presents three arguments:

> POINT I – THE PROSECUTOR'S REJECTION OF [DEFENDANT'S] APPLICATION TO BE ADMITTED INTO PTI CONSTITUTED A PATENT AND GROSS ABUSE OF DISCRETION.
>
> POINT II – THE JUDGE IMPROPERLY DECLINED TO MOLD THE JURY INSTRUCTION ON

6

UNLAWFUL POSSESSION OF A WEAPON TO THE FACTS THAT SUPPORTED [DEFENDANT'S] DEFENSE, INCLUDING HIS TESTIMONY THAT HE USED HIS WORKTOOL SPONTANEOUSLY IN SELF-DEFENSE.

POINT III – [DEFENDANT'S] SENTENCE WAS MANIFESTLY EXCESSIVE.

We are not convinced by the first argument. We hold that the trial court erred in not instructing the jury on self-defense as it related to the charge of unlawful possession of a weapon. Given our reversal of his conviction, defendant's argument about his sentence is moot.

A. The PTI Application

PTI "is a diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior." State v. Nwobu, 139 N.J. 236, 240 (1995). The program is governed by statute and court rule. N.J.S.A. 2C:43-12; R. 3:28-1 to -10. "N.J.S.A. 2C:43-12(e) sets forth a list of seventeen nonexclusive factors that prosecutors must consider in connection with a PTI application." State v. Johnson, 238 N.J. 119, 128 (2019). [2]

---

[2] Effective July 1, 2018, the Guidelines for considering an application to PTI were eliminated. See Guidelines for Operation of Pretrial Intervention in New Jersey, Pressler & Verniero, Current N.J. Court Rules, Guideline 3, following

Deciding whether to permit diversion to PTI "is a quintessentially prosecutorial function." State v. Wallace, 146 N.J. 576, 582 (1996). Accordingly, "prosecutors are granted broad discretion to determine if a defendant should be diverted" to PTI instead of being prosecuted. State v. K.S., 220 N.J. 190, 199 (2015) (citing Wallace, 146 N.J. at 582); see also State v. Negran, 178 N.J. 73, 82 (2003) (stating that courts must "allow prosecutors wide latitude").

"Thus, the scope of [judicial] review is severely limited." Negran, 178 N.J. at 82 (citing Nwobu, 139 N.J. at 246). "[T]o overturn a prosecutor's rejection, a defendant must 'clearly and convincingly establish that the prosecutor's decision constitutes a patent and gross abuse of discretion.'" State v. Watkins, 193 N.J. 507, 520 (2008) (citations omitted).

When a defendant is charged with a crime "for which there is a presumption of incarceration or a mandatory minimum period of parole ineligibility," that defendant is not eligible for PTI without the prosecutor's consent. R. 3:28-1(d)(1). At the time that he applied for PTI, defendant was

---

R. 3:28 at 935 (2021). However, many of the Guidelines' prescriptions – with significant variations – are now contained in Rule 3:28-1 to -10. Johnson, 238 N.J. at 128.

charged with second-degree aggravated assault, which carries a presumption of incarceration on conviction. See N.J.S.A. 2C:44-1(d).

We discern no abuse of discretion in the prosecutor's decision to withhold consent. Moreover, that decision did not constitute a patent and gross abuse of discretion.

B.    The Jury Charge on Unlawful Possession of a Weapon

"Jury instructions demand careful attention. They must provide a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." State v. Montalvo, 229 N.J. 300, 320 (2017) (citation and internal quotation marks omitted).

Defendant objected to the omission of a self-defense instruction in connection with the charge of unlawful possession of a weapon. Accordingly, if we find error, we apply a harmless error analysis. See R. 2:10-2. "Under that standard, there must be some degree of possibility that [the error] led to an unjust result. The possibility must be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached." State v. Baum, 224 N.J. 147, 159 (2016) (alterations in original) (citation and internal quotation marks omitted).

N.J.S.A. 2C:39-5 "makes the possession of certain unlicensed weapons, such as machine guns, handguns, rifles, or shotguns, a <u>per se</u> offense . . . regardless of the intent of the possessor or circumstances surrounding the possession." <u>State v. Kelly</u>, 118 N.J. 370, 379 (1990) (citing N.J.S.A. 2C:39-5(a) to (c)). The statute also "prohibits possession of any other weapon 'under circumstances not manifestly appropriate for such lawful uses as it may have.'" <u>Ibid.</u> (quoting N.J.S.A. 2C:39-5(d)). Defendant was charged with unlawful possession of a weapon under N.J.S.A. 2C:39-5(d). Specifically, the State alleged he unlawfully possessed a knife.

An instruction on self-defense is often not applicable to an alleged violation of N.J.S.A. 2C:39-5(d). <u>Kelly</u>, 118 N.J. at 381. Self-defense, however, is "relevant in the context of section 5d offenses when a defendant makes spontaneous use of a weapon in response to an immediate danger." <u>Id.</u> at 385. Our Supreme Court has made this point in several cases. <u>See, e.g.</u>, <u>Montalvo</u>, 229 N.J. at 322-23; <u>Kelly</u>, 118 N.J. at 385; <u>State v. Harmon</u>, 104 N.J. 189, 208-09 (1986); <u>State v. Lee</u>, 96 N.J. 156, 160 (1984).

In <u>Lee</u> and <u>Harmon</u>, our Supreme Court

> define[d] section 5d as proscribing possession of weapons regardless of the possessor's intent . . . [and] ma[d]e clear that allowing anticipatory self-defense as a justification for a section 5d offense is inconsistent

with the "carefully constructed scheme for the criminalization of possession of weapons in various situations" outlined by the Legislature in N.J.S.A. 2C:39-3, -4, and -5.

[Kelly, 118 N.J. at 378 (quoting Lee, 96 N.J. at 160).]

In Kelly, our Supreme Court observed:

[T]he carefully instructed legislative plan embodied in N.J.S.A. 2C:39, together with a review [of] Lee and Harmon establishes that a jury charge on self-defense is largely inapplicable in the context of section 5d offenses. If a person possesses an instrument for a legitimate purpose and makes immediate use of that instrument as a weapon in order to fight off an impending threat, then, and only then, is self-defense a justification to a section 5d offense. In such a case, the person would not have possessed the implement to use it as a weapon but for its proper purpose. Absent possession of the implement as a weapon, a person has not committed a section 5d offense.

[Id. at 381.]

In Kelly, the defendant armed herself with a carpet-cutting razor before leaving her home and, therefore, the Court held that a self-defense instruction was not required. Id. at 383-87. The Kelly Court "observed, however, that if the defendant had 'seized the weapon spontaneously and used it to defend herself against a life-threatening attack, then, she would not have possessed the weapon for a manifestly inappropriate purpose.'" Montalvo, 229 N.J. at 319 (quoting Kelly, 118 N.J. at 385).

11

In short, these cases teach that self-defense is a justification to a charge of violating N.J.S.A. 2C:39-5(d) in extraordinary circumstances. Those "extraordinary circumstances" include "those rare and momentary circumstances," Kelly, 118 N.J. at 372 (quoting Harmon, 104 N.J. at 208-09), "in which a person makes spontaneous use of a weapon to repel[] immediate danger," id. at 385 (citing Harmon, 104 N.J. at 208-09).

Defendant testified that he usually carried his pocketknife because he used it when working to cut up boxes. He also claimed that he had the knife on him on the night of November 13, 2013 because he had intended to go to work before getting the call from his former girlfriend. Most importantly, defendant testified that he was attacked by Mitchell and Moore and he spontaneously pulled out the knife in self-defense. Given that testimony, the judge should have instructed the jury that self-defense could be a justification to the charge of unlawful possession of a weapon if the jury found facts supporting self-defense.[3]

---

[3] In its brief, the State argues that the trial court gave an instruction on self-defense related to the charge of unlawful possession of a weapon. That argument is incorrect. The trial judge gave the instructions concerning self-defense related to aggravated assault and possession of a weapon for an unlawful purpose. The State cites to the discussion of the charge as it relates to possession of a weapon for an unlawful purpose. The trial court specifically refused to reference self-defense in connection with the charge of unlawful possession of a weapon.

The failure to give that instruction, moreover, was capable of producing an unjust result in this matter. The jury had been properly instructed that self-defense was applicable to the charges of aggravated assault and possession of a weapon for an unlawful purpose. By not giving that same instruction in connection with the charge of unlawful possession of a weapon, the jury could have reasonably concluded that self-defense was not relevant.

Indeed, the jury's acquittal on the charges of aggravated assault and possession of a weapon for an unlawful purpose suggests that the jury accepted the self-defense claim. There was really no dispute that an altercation took place and that Mitchell had been stabbed. The critical question in this case was whether defendant acted in self-defense.

Under defendant's version of events, he would not have possessed the knife for a manifestly inappropriate purpose. Accordingly, we are convinced that the error of not giving the self-defense instruction in connection with the charge of unlawful possession of a weapon was sufficient to raise reasonable doubt as to whether it led the jury to a verdict it otherwise might not have reached. Consequently, we vacate the conviction and remand. We also recommend that the Committee on Model Jury Instructions consider adding a model charge on when an instruction of self-defense should be given in

13

connection with a charge of unlawful possession of a weapon in violation of N.J.S.A. 2C:39-5(d). Given the reversal of his conviction, defendant's argument concerning his sentence is moot.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2598-19