294 N.J. Super. 330 (1996)
683 A.2d 555
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH PELLETERI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1996.
Decided October 21, 1996.
*331 Before Judges SHEBELL[1], BAIME, and BRAITHWAITE.
Joseph T. Afflitto, Sr. argued the cause for appellant (Afflitto, Raimondi & Afflitto, attorneys; Joseph T. Afflitto, Sr., of counsel and on the brief).
Thomas E. Bracken, Assistant Sussex County Prosecutor, argued the cause for respondent (Dennis O'Leary, Prosecutor, attorney; Mr. Bracken, on the letter-brief).
The opinion of the court was delivered by BAIME, J.A.D.
On May 30, 1990, our Legislature proscribed the "knowing" possession of "assault firearms." N.J.S.A. 2C:39-5f. Persons legally in possession of such firearms prior to the effective date of the statute could retain these weapons by obtaining the appropriate *332 registration. N.J.S.A. 2C:58-12. Included in the definition of "assault firearm" is "[a] semi-automatic rifle with a fixed magazine capacity exceeding [fifteen] rounds." N.J.S.A. 2C:39-1w(4). Defendant was convicted of "knowingly" having in his possession an assault firearm, a semi-automatic rifle with a magazine capacity of seventeen cartridges. He appeals, contending that the trial judge erred by rejecting his claims of mistake of law and mistake of fact, and by instructing the jury it could convict if it found he knowingly possessed the weapon even if he did not know its fixed capacity exceeded fifteen rounds. We affirm.

I.
We need not recount the facts at length. Defendant, an expert marksman who at one point was employed as a firearms instructor, won a Marlin semi-automatic rifle in the late 1980's by placing first in a police combat match. An avid gun collector, defendant placed the weapon in his safe. Defendant claimed that he neither inspected nor used the firearm. When the police recovered the gun from defendant's residence in December 1993, it still had the manufacturer's tags and the owner's manual attached to the trigger guard. The owner's manual indicated that the rifle could hold at least seventeen cartridges. Defendant claimed that he never read the manual. While conceding that he knew the rifle was a semi-automatic weapon, defendant contended that he was unaware that the firearm had a magazine capacity exceeding fifteen rounds.
At trial, defendant advanced the defenses of mistake of law and mistake of fact. He asserted that he made diligent inquiry respecting whether the guns in his collection constituted "assault firearms" when the 1990 legislation was enacted and obtained the requisite registration for some of his weapons. Defendant testified that he did not register the Marlin rifle because he did not know its fixed capacity exceeded fifteen rounds. The trial judge barred the defenses of mistake of law and mistake of fact on the grounds that the statutory prohibition was clearly written and *333 published, and that knowledge of the specific character of the weapon did not constitute an element of the offense. In response to a question propounded by the jury during its deliberations, the judge charged that defendant could be found guilty if he knowingly possessed the firearm but was unaware that its fixed capacity exceeded fifteen rounds. Defendant was convicted and placed on probation.

II.
Defendant couches his argument in terms of whether the trial judge erred by barring the defenses of mistake of law and mistake of fact. We find no merit in these arguments. R. 2:11-3(e)(2). As to the defense of mistake of law, defendant did not prove by "clear and convincing evidence" that he "diligently pursue[d] all means available to ascertain the meaning and application" of the statutory proscription. N.J.S.A. 2C:2-4c(3). By its very terms, N.J.S.A. 2C:39-1w(4) defines an "assault firearm" as a "semi-automatic rifle with a fixed magazine capacity exceeding [fifteen] rounds." The statutory language is "neither vague nor unclear," and was not an issue for the jury's consideration. State v. Elrose, 277 N.J. Super. 548, 556, 649 A.2d 1351 (App.Div. 1994).
The defense of mistake of fact suffered from much the same infirmity. The common law defense required not only that the defendant subjectively misperceive a fact critical to establishing the offense but also that the error be reasonable. See State v. Bess, 53 N.J. 10, 16, 247 A.2d 669 (1968); State v. Fair, 45 N.J. 77, 91, 211 A.2d 359 (1965). The Criminal Law Revision Commission recommended that the objective test be abrogated and that any "honest" error suffice to exonerate the defendant. Final Report of the New Jersey Criminal Law Revision Commission, comment to 2C:2-4 at 52-53 (1971). Our Legislature rejected that proposal by requiring that the defendant "reasonably arrive[] at the conclusion underlying the mistake." N.J.S.A. 2C:2-4a. Defendant's failure to inspect the weapon or read the owner's manual to determine whether it fell within the statutory definition was *334 unreasonable as a matter of law. We find no error in the trial judge's refusal to submit the issue to the jury.

III.
The prosecutor candidly points out that the trial judge instructed the jury that defendant could be found guilty if he knowingly possessed the firearm but was unaware its fixed capacity exceeded fifteen rounds. The question squarely presented is whether the State was required to prove that the defendant knew the gun in his possession was an assault firearm. We hold that knowledge of the character of the weapon is not an element of the offense.
N.J.S.A. 2C:39-5f provides in pertinent part that "[a]ny person who knowingly has in his possession an assault firearm is guilty of a crime of the third degree." The word "knowingly" thus modifies the phrase "has in his possession." The Code defines "possession" in terms of whether the "possessor knowingly procured or received the thing possessed or was aware of his control [of it] for a sufficient period to have been able to terminate his possession." N.J.S.A. 2C:2-1c. The Code provides that "a person acts knowingly with respect to the nature of his conduct ... if he is aware that his conduct is of that nature." N.J.S.A. 2C:2-2b(2).
We are satisfied that the Legislature intended to proscribe knowing possession, as distinguished from knowledge of the illegal character of the article possessed. Cf. State v. Labato, 7 N.J. 137, 148, 80 A.2d 617 (1951). In that context, "[k]nowing possession is not to be confused with criminal intent or guilty knowledge." Id. at 149, 80 A.2d 617. "At common law, scienter [was] an indispensable element." Ibid. But it is within the power of the Legislature to declare an act criminal irrespective of the motive of the actor. Ibid.; see also United States v. Freed, 401 U.S. 601, 610, 91 S.Ct. 1112, 1118, 28 L.Ed.2d 356, 362 (1971); United States v. Balint, 258 U.S. 250, 254, 42 S.Ct. 301, 303, 66 L.Ed. 604, 606 (1922); United States v. Holland, 810 F.2d 1215, 1223 (D.C. Cir.), cert. denied, 481 U.S. 1057, 107 S.Ct. 2199, 95 *335 L.Ed.2d 854 (1987); State v. Edwards, 257 N.J. Super. 1, 4, 607 A.2d 1312 (App.Div. 1992); State v. Torres, 236 N.J. Super. 6, 13, 563 A.2d 1141 (App.Div. 1989).
We are concerned here with a statute dealing with gun control. "New Jersey has carefully constructed a `grid' of regulations" on the subject. In re Two Seized Firearms, 127 N.J. 84, 88, 602 A.2d 728, cert. denied sub nom. Sholtis v. New Jersey, 506 U.S. 823, 113 S.Ct. 75, 121 L.Ed.2d 40 (1992). This is an area in which "regulations abound and inquiries are likely," and where the overarching purpose is to insure the public safety and protect against acts and threats of violence. State v. Hatch, 64 N.J. 179, 184, 313 A.2d 797 (1973); see also Burton v. Sills, 53 N.J. 86, 248 A.2d 521 (1968). "[T]he dangers are so high and the regulations so prevalent that, on balance, the legislative branch may as a matter of sound public policy and without impairing any constitutional guarantees, declare the act itself unlawful without any further requirement of mens rea or its equivalent." State v. Hatch, 64 N.J. at 184-85, 313 A.2d 797. When dealing with guns, the citizen acts at his peril. In short, we view the statute as a regulatory measure in the interests of the public safety, premised on the thesis that one would hardly be surprised to learn that possession of such a highly dangerous offensive weapon is proscribed absent the requisite license.
Affirmed.
NOTES
[1] Judge Shebell did not participate in oral argument. However, the parties consented to his participation in the decision subsequent to argument.