848 A.2d 875 (2004)
369 N.J. Super. 314
STATE of New Jersey, Plaintiff-Appellant,
v.
Leroy MOTLEY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 20, 2003.
Decided May 25, 2004.
*876 Peter C. Harvey, Attorney General, attorney for appellant (Jill S. Mayer, Deputy Attorney General, of counsel and on the brief).
Emmett E. Primas, Jr., Camden, attorney for respondent.
Before Judge PETRELLA, COLLESTER and FUENTES.
The opinion of the court was delivered by COLLESTER, J.A.D.
Pursuant to leave granted, the State appeals from an order granting defendant's appeal from the denial of his application for Pretrial Intervention (PTI). We reverse.
The facts are undisputed. In September 2002, the Attorney General Division of Criminal Justice initiated an investigation into a prostitution ring in southern New Jersey allegedly run by Anthony Kirkland, defendant's stepson. Investigators obtained information that illegal funds from this enterprise were being laundered by Kirkland with the assistance of his mother, defendant's wife. They obtained a search warrant for the residence occupied by defendant and his wife and executed it on the morning of August 30, 2001. The investigators asked the defendant whether there were any firearms in the residence. Defendant replied that he kept a carbine and an Uzi in the second level master bedroom and led police to the room. A Universal M1 carbine rifle was located under a loveseat in the master bedroom, and a 30-round M1 carbine magazine was found in the dresser drawer. An Uzi 9mm assault gun, a 25-round Uzi magazine, a sixteen inch Uzi barrel accessory and a sling for an Uzi assault gun were found in an unlocked box under the bed. Both weapons were unloaded. Defendant had no permit to purchase or possess these firearms in the State of New Jersey.
On June 23, 2002, an indictment was returned against defendant charging him *877 with two counts of third-degree possession of an assault firearm, contrary to N.J.S.A. 2C:39-5f, and two counts of fourth-degree unlawful possession of a large capacity magazine, contrary to N.J.S.A. 2C:39-3j. Defendant's application for admission into PTI was rejected by the Camden County PTI program coordinator for the following reasons:
Please be advised that your client's application has been denied pursuant to Guideline 3(i)(3) which indicates that defendants charged with acts which constitute violence or threat of violence should ordinarily be denied admission into Pretrial Intervention Programs in the absence of compelling facts and materials, provided by the defendant, justifying admission into the program.
....
The possession of firearms particularly high capacity assault firearms in a residence clearly presents a threat of violence and injury to the occupants and others and falls within Guideline 3(i)(3). N.J.S.A. 2C:43-12(e)1, 7 and 14 requires consideration of the nature of the offense, needs and interests of the victim and society and whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution.

N.J.S.A. 2C:43-12(e)(10) further demands consideration of whether or not the crime is of an assaultive or violent nature whether in the criminal act itself or in the possible injurious consequences of such behavior.....
Mr. Motley had no permit to purchase or possess these firearms which were in the second floor master bedroom. This possession of high power illegal weapons is assaultive not in the criminal act but in the possible injurious consequences of such behavior. I have considered the material submitted by the defendant including his age (62), lack of prior of convictions, long term employment and family responsibilities. Despite these factors and in view of the lack of joint application, nature of these offense[s] and potential for violence and injury, it is my opinion that the public need for prosecution outweighs any benefit to be derived by the defendant through PTI. The application is denied.
Defendant appealed his PTI rejection to the Law Division. The Office of the Attorney General appeared in opposition at the hearing on the appeal. It was stipulated that defendant was sixty-two years old, had no prior criminal record and was employed as a long-distance truck driver. Defendant lawfully acquired the weapons while he lived in Pennsylvania. The Uzi and ammunition were purchased from a licensed gun dealer, and the carbine from a friend. Defendant took the weapons with him when he moved to New Jersey but did not register them. The record also indicates that the Uzi was stolen while held for defendant in his lawyer's office pending an unrelated court proceeding. The weapon was recovered in Wilmington, Delaware and returned to the defendant in New Jersey.
The State argued that the manner in which the weapons were stored presented a safety risk due to the accessibility of the weapons to defendant's grandchildren. The State also indicated that its objection to granting PTI was based on a general policy decision respecting the possession of assault weapons. The trial court rejected these arguments and found that defendant's rejection from PTI constituted an abuse of discretion:
There has been absolutely no demonstration that other than the mere position (sic) of [the weapons] by this gentleman *878 that there was any other problem, that he either used them, meant to use them. They were there. He has no prior criminal conviction of any kind. He has steady employment. Married. Children. Grandchildren. And yes, he violated the law by having these in his possession.
Now, if that doesn't spell out the type of individual that PTI was meant to help, I don't know what does. To have to stretch beyond the facts that he broke the law, just the crime itself per se, had the gun, boom, well, he has grandchildren who are going in an out and that may have resulted in some kind of a problem where it never has to this date? I think that indicates a patent abuse of discretion and the rejection is denied. I think he should be placed in PTI. He's going to lose the gun, and [now] you have accomplished by that exactly what you want to do. You want to get rid of the guns. You want to impress upon somebody that hey, if you're going to do certain things, if you're going to have certain things, then it's your responsibility to check, to make sure that the possession of them, whatever that may be, follows the law. That satisfies all of the PTI rules, regulations, thoughts, reasons and the like. To deny this man that goes in my opinion as a gross, patent abuse of discretion and the rejection is denied.
PTI is a diversionary program designed to "augment the options of prosecutors in disposing of criminal matters... [and] provide applicants `with opportunities to avoid ordinary prosecution by receiving early rehabilitative services or supervision, when such services or supervision can reasonably be expected to deter future criminal behavior by an applicant.'" State v. Brooks, 175 N.J. 215, 223, 814 A.2d 1051 (2002). N.J.S.A. 2C:43-12 and Rule 3:28 elucidate the purposes, goals and considerations relevant to PTI. Admission requires a positive recommendation of the PTI director and the consent of the prosecutor. State v. Nwobu, 139 N.J. 236, 246, 652 A.2d 1209 (1995). A recommendation for denial by the prosecutor is subject to reversal only when it represents a "patent and gross abuse of discretion" or a clear error in judgment. State v. Leonardis II, 73 N.J. 360, 375 A.2d 607 (1977); see also, State v. Wallace, 146 N.J. 576, 581-85, 684 A.2d 1355 (1996); State v. Bender, 80 N.J. 84, 93, 402 A.2d 217 (1979); State v. Warriner, 322 N.J.Super. 401, 408-10, 731 A.2d 86 (App.Div.1999). Therefore, while R. 3:28 and its accompanying guidelines guarantee PTI eligibility to anyone charged with an indictable offense and a full and fair consideration of the application, a defendant is not entitled to admission as a matter right. State v. Atley, 157 N.J.Super. 157, 164, 384 A.2d 851 (App.Div.1978).
As the charging authority, the prosecutor has wide latitude to decide whom to divert into PTI and whom to prosecute. Nwobu, supra, 139 N.J. at 246, 652 A.2d 1209; State v. Baynes, 148 N.J. 434, 443-44, 690 A.2d 594 (1997); State v. Rosario, 237 N.J.Super. 63, 66, 566 A.2d 1173 (1989); State v. Kirchdoerffer, 156 N.J.Super. 172, 174-75, 383 A.2d 732 (App. Div.1978). Judicial review is thereby limited to instances of "most egregious examples of injustice and unfairness." Leonardis II, supra, 73 N.J. at 384, 375 A.2d 607; Nwobu, supra, 139 N.J. at 246, 652 A.2d 1209; State v. Negran, 178 N.J. 73, 80-81, 835 A.2d 301 (2003); State v. Hermann, 80 N.J. 122, 128, 402 A.2d 236 (1979); State v. Kraft, 265 N.J.Super. 106, 111, 625 A.2d 579 (App.Div.1993).
While the prosecutor's discretion is not without limits, Negran, supra, 178 N.J. at 82, 835 A.2d 301; Brooks, supra, 175 *879 N.J. at 225, 814 A.2d 1051, the defendant must establish that the prosecutor's denial of his acceptance into PTI was based on an abuse of discretion that was both patent and gross, described as follows:
Ordinarily, an abuse of discretion would be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.
[Bender, supra, 80 N.J. at 93, 402 A.2d 217.]
In addition to an individual assessment of the defendant's background and the circumstances of the crime, a prosecutor's law enforcement policy is relevant and proper to the prosecutor's decision, State v. Dalglish, 86 N.J. 503, 510-11, 432 A.2d 74 (1981), and issues of law enforcement policy are matters primarily for the prosecutor and not the judiciary. Ibid. See also, Nwobu, supra, 139 N.J. at 246, 652 A.2d 1209.
As we stated in State v. Seyler, 323 N.J.Super. 360, 370, 733 A.2d 497 (App. Div.1999), the "interests of society may justify the denial of an application for admission into PTI even though a defendant has led an exemplary life except for the conduct which forms the basis of the pending criminal charges." See, Wallace, supra, 146 N.J. at 589-90, 684 A.2d 1355 ("a prosecutor has the prerogative to view seriously matters of domestic violence"); see also, State v. Sutton, 80 N.J. 110, 119, 402 A.2d 230 (1979) ("the degree of local public anxiety attending to certain forms of misconduct" is a relevant factor to the prosecutor's decision); cf. State v. Lamphere, 159 N.J.Super. 562, 388 A.2d 998 (App.Div. 1978); State v. Poinsett, 206 N.J.Super. 307, 502 A.2d 578 (Law Div.1984).
In this instance, it is not for the judiciary to second guess or qualify the policy position taken by the Office of the Attorney General with respect to the possession of assault weapons and the danger associated with the maintenance of such weapons in an unsecured area. Such weapons are subject to strict regulations because of the inherently great danger in the use and misuse of such weaponry. State v. Pelleteri, 294 N.J.Super. 330, 335, 683 A.2d 555 (App.Div.1996). These weapons have been described as "weapons of choice for drug traffickers, violent offenders and members of organized crime." Coalition of New Jersey Sportsmen, Inc. v. Whitman, 44 F.Supp.2d 666, 668 (D.N.J. 1999), aff'd, 263 F.3d 157 (3d Cir.2001), cert. denied, sub nom., Coalition of New Jersey Sportsmen, Inc. v. DiFrancesco, 534 U.S. 1039, 122 S.Ct. 613, 151 L. Ed.2d 537 (2001); see also, Richmond Boro Gun Club, Inc. v. City of New York, 896 F.Supp. 276, 282-83 (E.D.N.Y.1995), aff'd, 97 F.3d 681 (2d Cir.1996) See generally, Daniel Abrams, Ending The Other Arms Race: An Argument for a Ban on Assault Weapons, 10 Yale L. & Pol'y Rev. 488, 518 (1992); Keith R. Fafaman, State Assault Rifle Bans and The Militia Clauses of the United States Constitution, 67 Ind.L.J. 187, 189-90 (1991).
The public policy concern respecting possession of assault weapons obviously relates to the manner in which they are possessed. Many of these weapons fall into the hands of criminals when stolen from legitimate owners. Coalition of New Jersey Sportsmen, Inc., supra, 44 F.Supp.2d at 686. Indeed, the Uzi possessed by defendant in this case was previously *880 stolen from his lawyer's office. The fact that these weapons were unsecured and lying on the floor in the master bedroom presented risks not only of danger of discovery and misuse by children, but also of discovery and theft by criminals. "When dealing with guns, the citizen acts at his peril." Pelleteri, supra, 294 N.J.Super. at 335, 683 A.2d 555. Furthermore, the fact that defendant legally obtained the weapons in another State did not by statute exonerate him from the need for registration and does not deprive the prosecutor of the exercise of discretion in denying PTI. "[W]here dangerous or deleterious devices or products are involved, the probability of regulation is so great that anyone who is aware that he is either in possession of or dealing with them must be presumed to be of aware of the regulation." In the Matter of Two Seized Firearms, 127 N.J. 84, 88, 602 A.2d 728 (1992), (quoting McIntosh v. Washington, 395 A.2d 744, 756 (D.C.1978)).
Judicial disagreement with a prosecutor's reasons for rejection does not equate to prosecutorial abuse of discretion so as to merit judicial override. State v. DeMarco, 107 N.J. 562, 566-67, 527 A.2d 417 (1987). In this instance, the hearing judge improperly substituted his own discretion for that of the Attorney General. We are therefore constrained to reverse.
Reversed.