55 A.3d 728

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
NICQUAN D. SCOTT, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 1, 2012—Decided November 8, 2012.

Before Judges PARRILLO, FASCIALE and MAVEN.

*Theresa Yvette Kyles*, Assistant Deputy Public Defender, argued the cause for appellant (*Joseph E. Krakora*, Public Defender, attorney; *Ms. Kyles*, of counsel and on the brief).

*Deborah Bartolomey*, Deputy Attorney General, argued the cause for respondent (*Jeffrey S. Chiesa*, Attorney General, attorney; *Ms. Bartolomey*, of counsel and on the brief).

The opinion of the court was delivered by

FASCIALE, J.A.D.

Defendant appeals from his convictions for second-degree possessing, receiving, or transferring a community gun, *N.J.S.A.* 2C:39–4a(2); and second-degree unlawful possession of a handgun, *N.J.S.A.* 2C:39–5b.[1] The judge imposed an aggregate ten-year prison sentence.[2] We affirm.

We focus primarily on the mens rea needed to convict defendant of the community gun charge. The question presented is whether the State must prove that defendant knew the firearm was a community gun. We hold that defendant's knowledge of the communal character of the firearm is not an element of *N.J.S.A.* 2C:39–4a(2).

Several people participated in the murder of a victim following a dispute over drugs. One individual requested that defendant retrieve a handgun that had been stashed in an old mattress lying in a nearby alley. Defendant retrieved the gun from the mattress and handed it to another individual who shot and killed the victim. The rusty gun was known to the several participants, available for anyone to access, and had been stored in the mattress for approximately a year and a half.

On appeal, defendant raises the following points:

*POINT I*

THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY REGARDING THE MENTAL STATE REQUIRED FOR DEFENDANT TO BE FOUND GUILTY OF POSSESSION OF A COMMUNITY GUN CONSTITUTES PLAIN ERROR. (Not Raised Below).

---

[1] The jury found defendant not guilty of the following charges: first-degree murder, *N.J.S.A.* 2C:11–3a(1) or (2); second-degree possession of a firearm for an unlawful purpose, *N.J.S.A.* 2C:39–4a(1); and third-degree witness tampering, *N.J.S.A.* 2C:28–5a.

[2] Defendant received a ten-year sentence with five years of parole ineligibility on the community gun conviction, concurrent to a ten-year sentence with five years of parole ineligibility on the unlawful possession of a handgun conviction.

*POINT II*
THE TRIAL COURT'S INADEQUATE ANSWER TO THE JURY'S FIRST TWO QUESTIONS, COMPOUNDED BY FALSE TESTIMONY BY A STATE'S WITNESS, REPEATED BY THE PROSECUTOR IN SUMMATION, PERMITTED THE JURY TO CONVICT DEFENDANT OF POSSESSORY CRIMES THAT WERE NOT CONSIDERED BY THE GRAND JURY AND FOR WHICH HE WAS NOT INDICTED. THIS VIOLATED HIS CONSTITUTIONAL RIGHTS TO INDICTMENT AND TO DUE PROCESS OF LAW. *U.S. Const.* amend. V; *N.J. Const.* art. I, ¶ 8. (Not Raised Below).

*POINT III*
BECAUSE THE TRIAL COURT FAILED TO PROVIDE SUFFICIENTLY DETAILED REASONS FOR THE SENTENCES IMPOSED, AND BECAUSE THE COURT ABUSED ITS DISCRETION IN ADDRESSING SCOTT'S FAILURE TO AGREE TO TESTIFY AGAINST HIS BROTHER, IF EITHER OR BOTH OF HIS CONVICTIONS ARE AFFIRMED, THIS MATTER MUST BE REMANDED FOR RE-SENTENCING.

A. Fact-finding at sentencing was so entirely inadequate that it escapes appellate review.

B. The court abused its discretion in refusing to consider mitigating factor twelve and in holding that defendant's refusal to testify against his brother "eliminate[d] any mitigating factors."

C. Because of the errors described above, defendant must be re-sentenced.

 After considering the record and briefs, we conclude that defendant's contentions in Points II and III are "without sufficient merit to warrant discussion in a written opinion." *R.* 2:11–3(e)(2). We concentrate on defendant's argument that to sustain a conviction pursuant to *N.J.S.A.* 2C:39–4a(2), the State must prove that he *knew* that the weapon was a community gun. He argues that the judge erred by charging the jury that

[t]he third count of the indictment charges [defendant] with the crime of [p]ossessing, [r]eceiving[,] or [t]ransferring a [c]ommunity [g]un. The statute . . . reads *"[a]ny person who possesses, receives[,] or transfers a community gun is guilty of a crime."*

[T]o find defendant guilty of this charge, the State has the burden of proving beyond a reasonable doubt each of the following two elements of the crime: it was a community gun; [and] two, defendant possessed, received[,] or transferred the community gun.

The first element that the State must prove . . . is [that] there was a community gun. A community gun means a firearm that is transferred among, between[,] or within any association of two or more persons who while possessing that firearm, engage in criminal activity, or use it unlawfully against the person or property of another. I have previously defined the term "firearm," and what is meant to possess an item under the law.[3]

---

3 "[W]hen used in our criminal statutes, '[p]ossession . . . signifies a knowing, intentional control of a designated thing, accompanied by a knowledge of its

> To transfer an item means to move property from one person or entity to another. To engage in criminal activity means to engage in activity that constitute[s] a crime. A crime is a violation of the law in which there is injury to the public or a member of the public.
>
> I have previously defined what it means to use an item unlawfully against the person or property of another.
>
> The second element that the State must prove beyond a reasonable doubt is that the defendant *possessed, received[,] or transferred* the firearm. I have defined what is meant to possess and to transfer an item under the law. The term to receive means to acquire possession, control[,] or title of the property.
>
> [ (Emphasis added).]

Defendant did not object to this charge. Thus, we review his argument according to the plain error standard. *R.* 2:10–2; *State v. Bunch,* 180 *N.J.* 534, 541, 853 *A.*2d 238 (2004). "Under that standard, '[a] reviewing court may reverse on the basis of unchallenged error only if it finds plain error clearly capable of producing an unjust result.'" *Bunch, supra,* 180 *N.J.* at 541, 853 *A.*2d 238 (alteration in original) (quoting *State v. Afanador,* 151 *N.J.* 41, 54, 697 *A.*2d 529 (1997)). Guided by the law governing statutory interpretation, we conclude that there was no error.

"The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). A court should "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." *Ibid.* (citation omitted). We strive "to give effect to every word of the statute and should not assume that the Legislature used meaningless language." *Med. Soc'y of N.J. v. N.J. Dep't of Law & Pub. Safety,* 120 *N.J.* 18, 26, 575 *A.*2d 1348 (1990). Lastly, we avoid an interpretation that would render part of the statute superfluous. *Id.* at 27, 575 *A.*2d 1348.

---

character.'" *State v. Pena,* 178 *N.J.* 297, 305, 839 *A.*2d 870 (2004) (alteration in original) (quoting *State v. Pena,* 301 *N.J.Super.* 158, 162–63, 693 *A.*2d 1195 (App.Div.1997)). The judge followed the model jury charge on possession, *N.J.S.A.* 2C:2–1c, including definitions for actual and constructive possession. He did so because the Legislature proscribed knowing possession of the firearm.

When interpreting a statute, the first step is to look to the plain meaning of the language. *Bergen Commercial Bank v. Sisler,* 157 *N.J.* 188, 202, 723 *A.*2d 944 (1999). Where varying interpretations are plausible, the court should look to "judicial interpretation, rules of construction, or extrinsic matters." *Ibid.; see, e.g., Bubis v. Kassin,* 184 *N.J.* 612, 620–22, 878 *A.*2d 815 (2005) (exploring *Black's Law Dictionary,* several English dictionaries, and existing case law to interpret the term "fence"). The Legislature has indicated that

> [the] words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.
>
> [*N.J.S.A.* 1:1–1.]

The statute at issue requires the State to prove that the weapon is a community gun, but it imposes no additional requirement that the State prove that defendant *knew* of the gun's illicit communal characteristic. Specifically, *N.J.S.A.* 2C:39–4a(2) provides that

> [a]ny person who *possesses, receives[,] or transfers a community gun* is guilty of a crime of the second degree and shall be sentenced to a term of imprisonment by the court. The term of imprisonment shall include the imposition of a minimum term. The minimum term shall be fixed at one-half of the sentence imposed by the court or three years, whichever is greater and during which the defendant shall be ineligible for parole. *As used in this paragraph,* "*community gun*" *means a firearm that is transferred among, between[,] or within any association of two or more persons who, while possessing that firearm, engage in criminal activity or use it unlawfully against the person or property of another.*
>
> [ (Emphasis added).]

Defendant's interpretation of *N.J.S.A.* 2C:39–4a(2) would require the State to prove that defendant knew that the firearm was "transferred among, between[,] or within any association of two or more persons who, while possessing that firearm, engage in criminal activity or use it unlawfully against the person or property of another." The Legislature omitted from the statutory text any such mens rea requirement. If the Legislature intended to include, as an element of the offense, that defendant must know that the firearm is a community gun, then we presume that the Legislature would have said so. "Courts read every word in a

statute as if it was deliberately chosen and presume that omitted words were excluded purposefully." 3A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 72:3 at 802 (7th ed. 2010); *see Lee v. Ashcroft*, 368 *F.*3d 218, 223 (3d Cir.2004) (noting that " 'where Congress includes particular language in one section of the statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion' " (quoting *INS v. Cardoza–Fonseca*, 480 *U.S.* 421, 432, 107 *S.Ct.* 1207, 1213, 94 *L.Ed.*2d 434, 448 (1987))).

The legislative history of *N.J.S.A.* 2C:39–4a(2) supports our interpretation that the State need not prove that defendant knew the weapon was a community gun. In 2007, the Legislature amended *N.J.S.A.* 2C:39–4a to add subsection a(2), the community gun offense.[4] Before the amendment, the statute provided:

2C:39–4. Possession of weapons for unlawful purposes

a. Firearms. Any person who has in his possession any firearm *with a purpose to use it unlawfully* against the person or property of another is guilty of a crime of the second degree.

b. Explosives. Any person who has in his possession or carries any explosive substance *with a purpose to use it unlawfully* against the person or property of another is guilty of a crime of the second degree.

c. Destructive devices. Any person who has in his possession any destructive device *with a purpose to use it unlawfully* against the person or property of another is guilty of a crime of the second degree.

d. Other weapons. Any person who has in his possession any weapon, except a firearm, *with a purpose to use it unlawfully* against the person or property of another is guilty of a crime of the third degree.

e. Imitation firearms. Any person who has in his possession an imitation firearm under circumstances that would lead an observer to reasonably believe that it is possessed for an *unlawful purpose* is guilty of a crime of the fourth degree. [*N.J.S.A.* 2C:39–4 (emphasis added).]

In each pre-amendment subsection of *N.J.S.A.* 2C:39–4, the Legislature expressly required, as an element of the offense, that the State prove that a defendant possessed a weapon with a purpose to use it unlawfully. When it amended the statute, however, the

---

[4] *L.* 2007, *c.* 24, § 1.

Legislature did not include the culpability requirement it had expressly stated in subsections a(1), b, c, d, and e. In subsection a(2), the Legislature omitted any express mens rea requirement that a defendant must know that the weapon is "a firearm that is transferred among, between[,] or within any association of two or more persons who, while possessing that firearm, engage in criminal activity or use it unlawfully against the person or property of another," *N.J.S.A.* 2C:39–4a(2). Therefore, the Legislature treated the community gun offense differently than firearms, explosives, destructive devices, other weapons, and imitation firearms offenses.

*N.J.S.A.* 2C:2–2c(1) instructs that "[w]hen the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, *unless a contrary purpose plainly appears.*" (Emphasis added); *see State v. Gandhi,* 201 *N.J.* 161, 187, 989 *A.*2d 256 (2010) (finding a "contrary intent" after interpreting our anti-stalking statute, *N.J.S.A.* 2C:12–10a(1)).[5] In interpreting the community gun statute, we conclude that such a contrary intent exists here.

By adding subsection a(2), the Legislature "establishe[d] enhanced penalties for persons who possess, receive[,] or transfer a community gun"; omitted any requirement that the State prove defendant knew of the gun's illicit community characteristic; and "address[ed] the problem of firearms that are transferred among and between gang members who, while possessing them, engage

---

[5] *See also State v. Bryant,* 419 *N.J.Super.* 15, 27–28, 15 *A.*3d 865 (App.Div.2011) (interpreting the second element of *N.J.S.A.* 2C:24–4a and concluding that "conduct which would impair or debauch the morals of the child, can be satisfied without proof that [a] defendant was aware his conduct would cause such a result"); *State v. Dixon,* 346 *N.J.Super.* 126, 136, 787 *A.*2d 211 (App.Div. 2001) (interpreting second-degree eluding, *N.J.S.A.* 2C:29–2b, and concluding that "a defendant need not knowingly create the risk [of death or injury] so long as the defendant ... is found to have committed third degree eluding with the requisite knowing culpability"), *certif. denied,* 172 *N.J.* 181, 796 *A.*2d 898 (2002).

in criminal activities." *Assembly Judiciary, Law and Public Safety Committee, Statement to A.2991* (May 18, 2006). Based on a reasonable reading of the statute in light of its purpose, we discern that the Legislature determined that the act of possessing a community gun is unlawful without any further mens rea requirement.

We reached a similar conclusion in *State v. Pelleteri,* 294 *N.J.Super.* 330, 334, 683 *A.2d* 555 (App.Div.1996), *certif. denied,* 148 *N.J.* 461, 690 *A.2d* 609 (1997). There, we interpreted *N.J.S.A.* 2C:39–5f (stating in part that "[a]ny person who knowingly has in his possession an assault firearm is guilty of a crime of the second degree") and addressed whether "the State was required to prove that the defendant *knew* the gun [he possessed] was an assault firearm." *Ibid.* (emphasis added). We concluded that "the Legislature intended to proscribe knowing possession, as distinguished from knowledge of the illegal character of the article possessed." [6] *Ibid.* In interpreting *N.J.S.A.* 2C:39–5f, we stated that

> the dangers [of guns] are so high and the regulations so prevalent that, on balance, the legislative branch may as a matter of sound public policy and without impairing any constitutional guarantees, declare the act itself unlawful without any further requirement of mens rea or its equivalent. When dealing with guns, the citizen acts at his peril. In short, we view the statute as a regulatory measure in the interests of the public safety, premised on the thesis that one would hardly be surprised to learn that possession of such a highly dangerous offensive weapon is proscribed absent the requisite license.
>
> [*Id.* at 335, 683 *A.2d* 555 (citation omitted) (internal quotation marks omitted).]

The New Jersey Supreme Court reached a similar result that "the Legislature intended to proscribe knowing possession, as distinguished from knowledge of the illegal character of the article possessed" when the Court analyzed a statute making it a crime to possess a defaced firearm. *Id.* at 334, 683 *A.2d* 555. In *State v.*

---

[6] It is a "well-established canon of statutory interpretation" that the Legislature is presumed to know the judicial construction of its enactments. *Johnson v. Scaccetti,* 192 *N.J.* 256, 276, 927 *A.2d* 1269 (2007). Our interpretation of *N.J.S.A.* 2C:39–5f "is supported by a long period of legislative acquiescence or failure to amend the statute indicating agreement with the Court's holdings." *State v. Chapland,* 187 *N.J.* 275, 291, 901 *A.2d* 351 (2006).

*Smith,* 197 *N.J.* 325, 337–38, 963 *A.*2d 281 (2009), the Court interpreted *N.J.S.A.* 2C:39–3d, which provides that "[a]ny person who knowingly has in his possession any firearm which has been defaced, . . . is guilty of a crime," and concluded that the mens rea needed for a conviction of possession of a defaced firearm is that a defendant know he possessed the firearm, not that he know the firearm was defaced. *See also State v. Des Marets,* 92 *N.J.* 62, 68, 455 *A.*2d 1074 (1983) (noting that "Graves Act sanctions apply upon a showing of possession of a firearm, without any need to demonstrate intent to use").

Here, defendant contends that the placement of the community gun provision in *N.J.S.A.* 2C:39–4, titled "[p]ossession of weapons for unlawful purposes," as opposed to section –3, titled "[p]rohibited weapons and devices," or section –5, titled "[u]nlawful possession of weapons," demonstrates that the Legislature intended the State to prove defendant knew he possessed, received, or transferred a community gun. He argues that *N.J.S.A.* 2C:39–3 and –5 relate to regulatory offenses and –4 prohibits possession of weapons for unlawful purposes. *See State v. Harmon,* 104 *N.J.* 189, 197–98, 516 *A.*2d 1047 (1986) (generally addressing that section titles highlight the difference in "the framework for regulating possession of firearms and other weapons"). We disagree.

We have previously stated in *State v. Malik,* 365 *N.J.Super.* 267, 279, 839 *A.*2d 67 (App.Div.2003), *certif. denied,* 180 *N.J.* 354, 851 *A.*2d 648 (2004), that

[t]he title of a statute, more properly called its "headnote", is deemed not "to be a part of" it, *N.J.S.A.* 1:1–6, and the Legislature repeated this principle in its enactment of the Penal Code. *N.J.S.A.* 2C:1–1(g).

Moreover, a headnote is not deemed dispositive, and it "does not control the statute's interpretation . . . [because] the headnote was not enacted simultaneously with the amended statutory provision [*N.J.S.A.* 2C:39–a(2) ] in issue." *Id.* at 280, 839 *A.*2d 67 (citations omitted). Here, the Legislature amended *N.J.S.A.* 2C:39–4 in 2007, well after the headnote was created. Thus, even if the headnote were dispositive, the headnote does not control because

it was not designated simultaneously with the amendment. *Id.* at 279, 839 *A.*2d 67.

We now turn to defendant's argument that penal statutes must be strictly construed against the State, the so-called "rule of lenity," and that this rule should guide our interpretation of the community gun statute. We find that this contention is "without sufficient merit to warrant discussion in a written opinion." *R.* 2:11–3(e)(2). We add the following brief comments.

"It has long been settled that 'penal statutes are to be construed strictly.' " *United States v. Campos–Serrano,* 404 *U.S.* 293, 297, 92 *S.Ct.* 471, 474, 30 *L.Ed.*2d 457, 462 (1971) (quoting *Fed. Commc'ns Comm'n v. Am. Broad. Co.,* 347 *U.S.* 284, 296, 74 *S.Ct.* 593, 601, 98 *L.Ed.* 699, 709, *reh'g denied,* 347 *U.S.* 965, 74 *S.Ct.* 773, 98 *L.Ed.* 1107 (1954)). "[O]ne 'is not to be subjected to a penalty unless the words of the statute plainly impose it.' " *Ibid.* (quoting *Keppel v. Tiffin Sav. Bank,* 197 *U.S.* 356, 362, 25 *S.Ct.* 443, 445, 49 *L.Ed.* 790, 792). " 'When choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.' " *Ibid.* (quoting *United States v. Universal C. I. T. Credit Corp.,* 344 *U.S.* 218, 221–22, 73 *S.Ct.* 227, 229, 97 *L.Ed.* 260, 264 (1952)); *see also State v. Bernstein,* 189 *N.J.Super.* 212, 219, 459 *A.*2d 1185 (App.Div.1983) ("[T]he statute is penal and thus must be strictly construed, so that no act is unlawful under it unless plainly and unmistakably forbidden.").

"The rule of lenity is an important principle of statutory construction; if a statutory ambiguity cannot be resolved by analysis of the relevant text and the use of extrinsic aids, the rule requires that the ambiguity be resolved in favor of the defendant." *State v. Regis,* 208 *N.J.* 439, 451, 32 *A.*3d 1109 (2011). Our Court has stated that

[t]he rule of lenity, however, is not invoked simply because there are competing judicial interpretations of the statutory language, in New Jersey or elsewhere.

12

> Instead, the rule of lenity is applied only if a statute is ambiguous, and that ambiguity is not resolved by a review of "all sources of legislative intent."
>
> [*Id.* at 452, 32 *A.*3d 1109 (citations omitted) (quoting *State v. D.A.,* 191 *N.J.* 158, 165, 923 *A.*2d 217 (2007)).]

Here, the Legislature has "spoken in language that is clear and definite," *Campos–Serrano, supra,* 404 *U.S.* at 297, 92 *S.Ct.* at 474, 30 *L.Ed.*2d at 462; defendant's act is "plainly ... forbidden," *Bernstein, supra,* 189 *N.J.Super.* at 219, 459 *A.*2d 1185.

Affirmed.