**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1917-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

NICHOLAS M. MARTINEZ,

    Defendant-Appellant.

_____

Submitted April 14, 2026 – Decided May 12, 2026

Before Judges Susswein and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 24-03-0277.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Ethan Kisch, Assistant Deputy Public Defender, of counsel and on the briefs).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Deepa S. Jacobs, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Nicholas M. Martinez appeals from the trial court's November 15, 2024 order denying his admission into the pretrial intervention (PTI) program. Because we hold that the prosecutor did not commit a patent and gross abuse of discretion in denying the application, we affirm.

I.

Defendant lived in a boarding house with four other individuals: J.H.,[1] J.H.'s fifteen-year-old daughter, and two adult women, J.A. and S.C. On October 19, 2022, J.H. contacted the police after finding what appeared to be a "charging cube plugged into an outlet" facing the shower on the side of the bathroom mirror in the shared bathroom. The object turned out to be a hidden camera, which J.H. brought to the police.

Pursuant to a search warrant, detectives examined the camera and discovered 184,909 files, which included images of J.A and S.C. in the shared bathroom. Some of the images had photographs of the women either in their undergarments or partially naked. One of the videos depicted defendant "setting up the camera and securing it to the wall."

Approximately seventeen months later, defendant was charged by indictment with third-degree invasion of privacy, N.J.S.A. 2C:14-9(b)(1) and

---

[1] We use initials to protect the identity of the victims. R. 1:38-3(c)(12).

A-1917-24

fourth-degree invasion of privacy, N.J.S.A. 2C:14-9(b)(2). At his arraignment, defendant applied for PTI. Defendant's application was rejected by the Criminal Division Manager/PTI Director as memorialized in a letter explaining that defendant "does not meet the criteria for entry into the program."

Defendant appealed his rejection, which the State opposed. On November 15, 2024, following oral argument, the court issued a written decision denying defendant's appeal of the denial of his entry into PTI.

On December 19, 2024, pursuant to a plea agreement, defendant pled guilty to the two charges in exchange for the State's recommendation of non-custodial probation and a no contact order for each of the victims. On February 14, 2025, defendant was sentenced consistent with the plea agreement to a one-year period of non-custodial probation on each count to run concurrently, no contact with the victims, as well as mandatory fines and assessments. Additionally, defendant entered a consent order to revoke his firearms purchaser identification card.

Defendant appeals, raising the following point for our consideration:

> POINT I
> THIS COURT SHOULD REVERSE THE DENIAL OF [DEFENDANT'S] PTI APPLICATION AND ADMIT HIM INTO PTI.

3

Specifically, defendant contends the State made five errors in its analysis of his PTI application by: (1) failing to explain why a probationary sentence rather than admission into PTI was appropriate; (2) failing to examine how PTI could assist in defendant's rehabilitation; (3) wrongly concluding that three statutory factors were "not applicable;" (4) misapplying factor eight and incorrectly concluding that defendant offense was "part of a continuing pattern of anti-social behavior;" and (5) failing to address defendant's lack of new arrests or convictions in the eighteen months since the initial offense.

## II.

## A.

Our analysis begins with the legal framework for evaluating a PTI appeal. "PTI decisions are 'a quintessential[] prosecutorial function' . . . [thus] our review of a prosecutor's denial of a PTI application is 'severely limited. . . .'" State v. E.R., 471 N.J. Super. 234, 244-45 (App. Div. 2022) (first quoting State v. Wallace, 146 N.J. 576, 582 (1996); and then quoting State v. Negran, 178 N.J. 73, 82 (2003)). "As the charging authority, the prosecutor has wide latitude to decide whom to divert into PTI and whom to prosecute." State v. Motley, 369 N.J. Super. 314, 320 (App. Div. 2004) (citing State v. Neobu, 139 N.J. 236, 246 (1995)); see also State v. Johnson, 238 N.J. 119, 128 (2019) (quoting State v.

Roseman, 221 N.J. 611, 624 (2015)) (internal quotation marks omitted) ("[T]he prosecutor's decision to accept or reject a defendant's PTI application is entitled to a great deal of deference."). Accordingly, our review of a PTI rejection "serves to check only the 'most egregious examples of injustice and unfairness.'" Negran, 178 N.J. at 82 (quoting State v. Leonardis, 73 N.J. 360, 384 (1977)). Therefore, "a prosecutor's decision to reject a PTI applicant 'will rarely be overturned.'" State v. Baynes, 148 N.J. 434, 443 (1997) (quoting Wallace, 146 N.J. at 585).

"A court reviewing a prosecutor's decision to deny PTI may overturn that decision only if the defendant 'clearly and convincingly' establishes the decision was a 'patent and gross abuse of discretion.'" Johnson, 238 N.J. at 128-29 (quoting Wallace, 146 N.J. at 583). To establish this standard, a defendant must show "that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment." Roseman, 221 N.J. at 625 (quoting State v. Bender, 80 N.J. 84, 93 (1979)) (internal quotation marks omitted). Defendant must further show the prosecutor's denial will "clearly subvert the goals underlying [PTI]." Ibid. (quoting Bender, 80 N.J. at 93). A "[d]efendant generally has a heavy burden when seeking to overcome

a prosecutorial denial of his [or her] admission into PTI." State v. Watkins, 193 N.J. 507, 520 (2008) (citation omitted).

"A rejected applicant must be provided with a clear statement of reasons for the denial." Negran, 178 N.J. at 82 (citing N.J.S.A. 2C:43-12(f)). "[T]he statement of reasons must demonstrate that the prosecutor has carefully considered the facts in light of the relevant law." Wallace, 146 N.J. at 584 (citing State v. Sutton, 80 N.J. 110, 117 (1979) ("The statement of reasons may not simply 'parrot' the language of relevant statutes, rules, and guidelines.")). "A reviewing court must assume, absent evidence to the contrary, that the prosecutor's office has considered all relevant factors in reaching the PTI decision." Nwobu, 139 N.J. at 429 (citations omitted).

N.J.S.A. 2C:43-12(e) sets forth the factors to be considered:

> (1) The nature of the offense;
> (2) The facts of the case;
> (3) The motivation and age of the defendant;
> (4) The desire of the complainant or victim to forego prosecution;
> (5) The existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment;
> (6) The likelihood that the applicant's crime is related to a condition or situation that would be conducive to

6

change through his participation in supervisory treatment;

(7) The needs and interests of the victim and society;

(8) The extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior;

(9) The applicant's record of criminal and penal violations and the extent to which he may present a substantial danger to others;

(10) Whether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior;

(11) Consideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal act;

(12) The history of the use of physical violence toward others;

(13) Any involvement of the applicant with organized crime;

(14) Whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution;

(15) Whether or not the applicant's involvement with other people in the crime charged or in other crime is such that the interest of the State would be best served by processing his case through traditional criminal justice system procedures;

(16) Whether or not the applicant's participation in pretrial intervention will adversely affect the prosecution of codefendants; and

(17) Whether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program.

7

A-1917-24

B.

Applying these principles, we are not persuaded by defendant's arguments that the prosecutor's decision to deny his entry into PTI was a gross and patent abuse of discretion. Rather, defendant's arguments amount to disagreements with the prosecutor's decision and qualitative assessment of the relevant factors. The prosecutor found the following factors most relevant: N.J.S.A. 2C:43-12(e)(1), (2), (3), (4), (7), (8), (14), and (17), and determined that factors (5) and (6) were inapplicable. We are satisfied the trial court correctly found that the prosecutor reasonably considered all relevant factors, qualitatively analyzed those factors, and determined that the "negative factors outweighed the positive aspects pertaining to defendant's character and ultimately concluded that he would not be amenable to the rehabilitative and supervisory nature of PTI."

We address in turn the five errors defendant claims resulted in the prosecutor's flawed analysis and gross abuse of discretion, thus requiring a remand. Defendant asserts the prosecutor failed to explain why a probationary sentence, rather than PTI, would be appropriate, and relatedly, failed to examine how PTI could assist in defendant's rehabilitation. In support of his arguments, defendant relies upon our decision in E.R, 471 N.J. Super. at 244. Defendant's reliance on E.R., however, is misplaced.

8

In E.R., it was "uncontroverted" that defendant, a middle-aged woman charged with hitting a police officer, "suffer[ed] from mental health issues and ha[d] been diagnosed with schizoaffective disorder, bipolar type," and the court had been provided with "extensive records . . . regarding . . . an extensive history of mental health disorder[s]." Id. at 242 (citation omitted) (last alteration in original). Contrary to the present case, the prosecutor had been supplied with defendant's mental health records and advised she was compliant with mental health treatment yet failed to explain why the "level of supervision under PTI [was] simply not enough." Id. at 243 (citation omitted). Under these circumstances, we held that defendant was "deprived of the comprehensive individual assessment" the prosecutor was required to undertake. Id. at 248.

The facts in E.R. are distinguishable from the present facts. Contrary to E.R., defendant provided no documentation regarding any mental health or psychological issues underlying his present offenses, nor did he provide proof of engagement in meaningful treatment aimed at reducing any potential risk of reoffending. Therefore, the prosecutor had no additional information to consider regarding defendant's mental health issues, diagnoses or rehabilitation plan.

A-1917-24

Moreover, as to defendant's rehabilitation, we agree with the State that there are more significant penal consequences to an individual resulting from a conviction of a crime than from enrollment into PTI. Further, a potential violation of probation carries serious consequences, including incarceration, as compared with a violation of PTI conditions. Given these distinctions, the serious nature of the offenses charged and the need to deter defendant and others from such behavior, we discern no error with the prosecutor's analysis in this regard.

Next, defendant contends the prosecutor erred by "wrongly conclud[ing]" that PTI factors ten ("[w]hether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior"); fifteen ("[w]hether or not the applicant's involvement with other people in the crime charged or in other crime is such that the interest of the State would be best served by processing his case through traditional criminal justice system procedures"); and sixteen ("[w]hether or not the applicant's participation in pretrial intervention will adversely affect the prosecution of codefendants") were "not applicable." N.J.S.A. 2C:43-12(e)(10), (15), and (16). Instead, defendant argues, these factors should have been credited toward defendant's admission into PTI because his "offense was non-

10

violent, . . . he did not conspire with other individuals, and [his entry into] PTI would not affect any other prosecutions."

Factor ten includes consideration of the nature of the harm and its resulting consequences. N.J.S.A. 2C:43-12(e)(10). To contend that defendant's actions of secretly videotaping "unsuspecting victims" in a shared bathroom in a boarding house is not "assaultive" nor harmful is without merit. Although the prosecutor did not find this factor applicable, given the facts of this case, it certainly could have been considered as weighing against defendant's PTI admission. Nonetheless, the record does not support a determination that this factor weighs in favor of defendant's admission.

The remaining factors were not applicable because defendant's conduct neither involved other people nor would defendant's PTI participation impact the prosecution of any co-defendants of which there were none. We discern no error in the prosecutor's determination that these factors did not apply in this case.

Defendant next argues that the prosecutor misapplied factor eight ("the extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior") because defendant's conduct did not constitute a "continuing pattern of anti-social behavior." N.J.S.A. 2C:43-12(e)(8).

11

Although the trial court and the prosecutor credited defendant with no prior criminal convictions, defendant's conduct of "furtively record[ing] women (and, potentially, a teenage[] girl) in the [privacy of] the bathroom is anti-social behavior" as the prosecutor explained. Moreover, defendant's conduct occurred on separate occasions over the course of twenty days between October 1 and October 20, 2022, involved two separate victims, and resulted in approximately 184,000 files being captured by this hidden camera.

In the present case, the prosecutor did not rely exclusively on factor eight in its analysis, nor did it rely on past offenses or criminal conduct not resulting in a conviction. See State v. Kern, 325 N.J. Super. 435, 446 (App. Div. 1999) (error for prosecutor to conclude there was a continuing pattern of anti-social behavior given time gaps "between periods of fraud" and "no actual proof of overarching fraudulent intent"); see also State v. K.S., 220 N.J. 190, 199 (2015) ("[W]hen no[] undisputed facts exist or findings are made, prior dismissed charges may not be considered for any purpose" when evaluating a defendant's PTI application). We are satisfied that the prosecutor qualitatively assessed this factor and weighed it against defendant's admission.

Lastly, defendant argues the prosecutor failed to consider his lack of criminal convictions or new arrests during the seventeen months between the

12

offense date and his indictment. We are not persuaded. As noted previously, both the prosecutor and trial court considered defendant's lack of a prior criminal record. The prosecutor determined that any positive aspects were outweighed by the negative factors, and in reviewing that determination, the trial court found that "the State properly assessed the relevant and appropriate factors" and "rightfully has a significant interest in deterring the commission of invasion of privacy crimes, especially [those occurring] in one's own home." As we underscored in Motley, the "'interests of society may justify the denial of an application for admission into PTI even though a defendant has led an exemplary life except for the conduct which forms the basis of the pending criminal charges.'" 369 N.J. Super. at 321 (quoting State v. Seyler, 323 N.J. Super. 360, 370 (App. Div. 1999)) (citations omitted).

We are satisfied there is no basis to conclude the prosecutor's decision to reject defendant's PTI application was "so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention." Watkins, 193 N.J. at 520 (citations and internal quotation marks omitted). As the trial court found, the prosecutor conducted an individualized assessment of defendant's circumstances, qualitatively considered the relevant factors set forth in N.J.S.A. 2C:43-12, and concluded that PTI was not

13

appropriate in this case. We are convinced the prosecutor appropriately exercised its broad discretion by denying defendant's PTI application and there is no basis to reject that decision.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

14

A-1917-24